8394

STATE *EX REL.* CAUSEY, CLERK, v. CAUSEY, EXOR.

1. OFFICERS—OFFICIAL BONDS.—Where one is elected to an office for several successive terms and gives an official bond for each term, the respective bonds are liable for defaults occurring during the term for which each was given.

*Commissioners* v. *Greenwood,* 1 DeS. 451; *Street* v. *Laurens,* 5 Rich. 227, *followed. State* v. *Moses,* 18 S. C. 366, *distinguished from this case.*

2. IBID.—IBID.—Where one is elected to an office and gives an official bond, and another is elected to succeed him and gives an official bond, the first bond is liable for funds received by the first officer and not turned over to his successor, unless the successor was negligent in collecting the funds from his predecessor.

*State* v. *Moses,* 18 S. C., 366, *distinguished from this case.*

3. OFFICIAL BONDS—EVIDENCE—PAROL—EQUITY.—Whether the liabilities of the sureties of several successive official bonds are primary or secondary is not founded on contract, but is a mere equity which may be established by parol.

4. OFFICER—DEFAULT.—Failure to pay over official funds as required by statute or to pay over on demand, constitutes defaults chargeable to the official bonds of force during the time they occur.

5. IBID.—OFFICIAL BONDS.—The failure of a clerk to pay over public funds when required by statute, or on demand pursuant to an order of Court, during one term is *prima facie* evidence of a conversion at that time, and that the officer did not have the funds on hand at the commencement of the succeeding term.

6. IBID.—IBID.—A secondary default may occur during a second term where an officer negligently fails to collect from himself, or his sureties during his first term, funds which it was his duty to have turned over to himself as his own successor.

Before DEVORE, J., Hampton, August, 1911. Modified.

Action by State of South Carolina, *ex relatione* L. F. Causey, clerk of court, against R. E. Causey, executor of W. B. Causey, The United States Fidelity and Guaranty Co. and Gulf and Atlantic Insurance Co. Both parties appeal.

*Messrs. E. F. Warren & George Warren,* for plaintiffs-appellants, cite: *Acts virtuti or colore officii:* 71 S. C. 154;

4 N. Y. 173; 1 Fed. Cases 183; 111 U. S. 17; 84 Fed. 400;
29 Cyc. 1455, 1456, 1452; 110 Mich. 156; 5 Ohio S. & C.
P. Dec. 442; 5 Ohio N. P. 321; 131 N. C. 396.

*Mr. J. W. Manuel,* for Causey, executor, appellant.

*Mr. W. B. deLoach,* for Hughey, guardian, respondent.

*Mr. W. D. Connor,* for Hampton Loan & Exchange
Bank, respondent.

*Messrs. Miller, Whaley & Bissell* and *J. W. Moore,* for
defendant, The United States Fidelity and Guaranty Co.,
appellant, cites: *Sureties on an official bond is not liable for
funds wrongly collected by their principal:* 6 Ency. 142; 41
W. Va. 744; 29 Ind. 294; 67 Ind. 541; 10 Rich. 442; 4
Stro. 20; 2 McM. 322; 71 S. C. 9; 59 S. C. 483. *Defaults
on continuing and successive bonds are liable:* 2 Bail. 524;
2 McC 55; 18 S. C. 366; 20 S. C. 466; 68 S. C. 204; 89
S. C. 224. *Primary liability:* 20 S. C. 466; 2 Bail. 524:
27 Ency. 225; 158 N. Y. 65.

*Mr. W. H. Townsend,* for defendant, Gulf and Atlantic
Insurance Co., appellant, cites: *As to additional and sub-
stituted bonds for same term of office:* 2 Bail. 399; Stearns
on Sur., sec. 175; 142 Ala. 434; 4 A. & E. Ann. Cas. 345;
2 Bail. 524; 18 S. C. 368. *As to separate bonds for suc-
cessive terms of office:* 10 Am St. R. 843; Stearns on Sur.,
sec. 173; 78 Me. 457; 5 Rich. Eq. 240; 89 S. C. 227; 1 McC.
41; 2 Hill 589; 1 Des. 452; 11 S. C. 388; McM. 384. *Doc-
trine of subrogation applies:* 68 S. C. 439; 35 Pa. St. 111;
14 L. R. A. 155; 14 L. R. A. (N. S.) 162. *What is a con-
tinuing default:* 5 Rich. Eq. 241; 95 N. C. 402; 1 Hill Ch.
429; 15 S. C. 258; 11 S. C. 389; McM. 384; 30 S. C. 49.

December 19, 1912. The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE GARY.   W. B. Causey, upon his election as clerk of court for Hampton county, executed his bond on the 2d of January, 1905, with The United States Fidelity and Guaranty Company, as surety.   At the expiration of his term of office he was re-elected, and executed a new bond, dated the 6th of January, 1909, with the Gulf and Atlantic Insurance Company, as surety.   Both bonds contained the condition as required by the statute, that the officer "shall well and truly perform the duties of said office, as now or hereafter required by law, during the whole period he may continue in said office."   W. B. Causey died on the 13th of April, 1909.   The State instituted separate proceedings on said bonds, but the actions were afterwards consolidated.   The testimony shows conclusively, that all sums of money, for the recovery of which these actions were brought, were received by the clerk of court in the discharge of his official duties, during his first term of office, except the sum of $139.34, claimed by the Hampton Loan and Exchange Bank, which came into his hands on the 10th of April, 1909.   Causey failed to comply with the requirements of section 1227, Code of Laws (1912), and, refused to pay said sums to the respective parties entitled to them, although frequent demands were made upon him, during his first term of office.   The referee, to whom all issues were referred, ruled that both companies were equally liable for all the defaults of Causey.   He also ruled as follows, in regard to the equities between the sureties on the respective bonds:

"As to the joint liability of the two insurance companies, I hold that a default accruing during the life of the first bond, and continuing into the period covered by the second bond, is a continuing default, which makes the surety of the second bond, equally liable with the surety of the first; for the testimony is, that whilst most of the defaults were made during the period of the first bond, it has ever since continued."   Exceptions assigning error in regard to said con-

clusions, were overruled on appeal to the Circuit Court, and the said questions, are now before this Court for consideration.

The first question that will be considered is, whether the relation of the sureties on the two bonds towards each other, is different from what it would have been, if Causey had not been re-elected, but had been succeeded by another party, as clerk of the court.

In the case of *Commissioners* v. *Greenwood,* 1 Dess. 451, it appears that Bocquet was elected a commissioner for the treasury, and gave his bond for the faithful performance of the duties of his office according to law. After the expiration of his term of service, he was re-elected, but did not give a new bond. In discussing the question whether the bond was binding, except for defaults committed during his first term of office, the Court stated the principle as follows: "We are of the opinion, that this bond can only be obligatory, for such defalcations as may have occurred, during Bocquet's continuance in office, under his first appointment; because his election by the legislature, was a new act. It was a new legislature; he received a new commission; he took the oath anew; and the executive ought to have taken a new bond. So, likewise, on his second election; it was a new house of legislature; another governor; he had a new commission, and took the oath again. Though the same person, he was a new officer, and the Constitution required all those acts to be done each time; they ought to have been done, and we must consider them as done. If they were not, there was no blame imputable on the defendants. If the public sustains a loss, the censure must fall on those, whose duty it was, to have taken care of the interest of the State. The neglect of doing what ought to have been done, cannot revive or give efficacy to a bond, for a longer period than it was intended to be binding." See, also, *S. C. Society* v. *Johnson,* 1 McC. 41; *S.*

*C. Ins. Co.* v. *Smith,* 2 Hill 589; and *Hall* v. *Hall,* 45 S. C. 166, 22 S. E. 818.

. The same doctrine was announced in the case of *Whitmire* v. *Langston,* 11 S. C. 381, in which the Court, speaking of an officer who succeeds himself, used the following language: "The fact that both are the same person, makes no difference in this respect, for the terms of the office are distinct and separate, and if there is evidence, that at the expiration of the first term, the funds were properly turned over to the successor, although the person be the same, the sureties on the official bond for the first term, are thereby discharged. *Vaughn* v. *Evans,* 1 Hill Ch. 414; *Field* v. *Pelot,* McMull. Eq. 370; *Enicks* v. *Powell,* 2 Strob. Eq. 196.

"The case of *Vaughn* v. *Evans* is questioned by Harper (who delivered the opinion in it), in the subsequent case of *Field* v. *Pelot,* but the explanation of *Vaughn* v. *Evans* by Johnson Ch., in his separate opinion in *Field* v. *Pelot,* is very satisfactory, and is clear on this point, that in *Vaughn* v. *Evans,* it was held 'that a surety is discharged if no act of maladministration was committed, during his time; provided he can show, that at the expiration of that time, the trust fund passed into hands, lawfully entitled to the possession of it.'

"The case has always been recognized as authority, and the same doctrine is upheld in *Street* v. *Laurens,* 5 Rich. Eq. 227."

Turning to the last mentioned case, we find the facts were as follows: Mr. Laurens was four times elected as master in equity, for Charleston district. His mother, Mrs. Eliza Laurens, was one of his sureties on his official bonds, for his first and second terms. It was not denied, that the assets for which the plaintiffs sought a recovery, came into the hands of Mr. Laurens, during his first two terms; in other words, during the time for which Mrs. Laurens was bound, as one of his sureties. It was contended, that his default related to cash received by him, and not paid to the

rightful owner; and that, when he was elected for the third time and qualified, he became debtor for that cash to plaintiff as his own successor, upon the principle that where the rights of creditor and the obligations of a debtor, of payer and payee, combine in the same person, the debt is discharged; that the money must be considered as having been paid by himself to himself, at the commencement of his last term, and that the liability for the misappropriation of the money was, therefore, thrown upon the sureties of his last official bond.

In disposing of this question, Chancellor Dargan used this language: "But the rule on which the exceptants rely, is subject to modifications and exceptions. It would not apply to a case where consequential damages, resulted from the nonfeasance or misfeasance of an act, which the official duty of the master required him to perform; as not taking a mortgage and security when he was required; or taking these securities in so negligent or defective a manner, as to render them ineffectual for the purposes intended. In these, and similar cases, the damages resulting in one term, would not be considered as payable to himself as his own successor, in his succeeding term, but the liability would attach permanently, upon the sureties of the first official bond. And, so, where the loss has resulted directly from the act of the master; as where the fund has been lost by him from carelessness or at play; or has been applied by him to the payment of his own debts, or his own use in any way, or was otherwise misappropriated. And so, also, in my judgment, where the purpose of giving greater security and productiveness to a fund, and removing it as far as possible beyond the control of the master, and the hazards to which it might be exposed in his hands, the general law or a special order of the Court directs him to make a particular disposition of the fund, which he omits to do, and loss results directly, or indirectly; the liability must be referred to the official bond of that term during which the default was committed."

20—93

The authorities elsewhere are to the same effect. In the note to the case of *Crown* v. *Commonwealth,* 10 Am. St. Rep. (Va.) 839, the annotator, after reviewing the decisions, deduces the following as the true principle:

"If the same person is required to give annual bonds, or if having been re-elected to the same office, he gives a bond for the performance of its duties during the second term, the general rule is, that the sureties on each bond are liable only for the defaults, which have occurred during the particular term or period, for which it was given. The defaults of a prior term, are not chargeable against the sureties on an official bond for a subsequent term. *Bissel* v. *Saxton,* 77 N. Y. 191; *Patterson* v. *Inhabitants, etc., of Freehold,* 38 N. L. 225; *Paw Paw* v. *Eggleston,* 25 Mich. 36; *Rochester* v. *Randall,* 105 Mass. 295; 7 Am. Rep. 519; *Street* v. *Laurens,* 5 Rich. 227; *Hewitt* v. *State,* 6 Har. & J. 95, 14 Am. Dec. 259. So far as practicable the sureties upon the last bond should be treated precisely, as if their principal had not been the incumbent of the office, during the preceding term. *City of Detroit* v. *Weber,* 29 Mich. 24; *Vivian* v. *Otis,* 24 Wis. 518, 1 Am. Rep. 199; *Paducah* v. *Cully,* 9 Bush. 323."

The next question that will be considered, is as follows: If a person, is elected to an office and gives a bond with sureties, but is not re-elected, and his successor enters into a bond with sureties, will the sureties on the bond of the successor, be liable for funds received by the predecessor, unless they are received by the successor, or unless he is guilty of negligence, in collecting them from his predecessor?

The rule is thus stated in the case of *Fields* v. *Pelot,* McMull. Eq. 370: "If a guardianship should be revoked and so continue, the surety would be liable for everything, which the guardian had received, up to that time and should afterwards fail to pay over. Nor would it be necessary to

show, that the guardian had actually wasted, or committed any act of maladministration, before the revocation. * * *

"If the guardianship should be revoked and a different person appointed guardian, it would be said in general, that the sureties of the former, were chargeable only with past liabilities, and those of the latter, for future ones. Yet I apprehend, they both might be liable for the same money, and in relation to the ward, the securities regarded as cumulative. Upon the new appointment, it would be the duty of the former, to pay over the funds in his hands, to the new guardian. If his surety were sued on his bond, in order to defend himself, it would be necessary to show, that the funds had so been paid over. It would be the duty of the new guardian to collect from the former the funds in his hands. If he neglected to do so, he would be liable for the default, and, if sued, in order to defend himself, he would be obliged to show, that he had used due diligence, or that the former guardian was insolvent.

"The case seems the same when the guardianship is revoked, and afterwards committed to the same person; except so far as a difficulty arises, from the guardian's duty of paying himself, and collecting from himself."

When the person first elected has not succeeded himself in office, the liability of the sureties on the bond of his successor, arises from the fact, that money which was in the hands of the predecessor, was turned over to the successor, and afterwards misappropriated by him. If the funds were misappropriated by the first officer, and he was insolvent when the second bond was given, it would be against justice and equity to hold the successor responsible, when he was in no respect whatever, connected with the default.

A contrary doctrine would make the sureties on the second bond, liable for all defaults committed during the predecessor's term of office, and this would be against the express provisions of the bond signed by the sureties.

The same rule is applicable when the officer succeeds himself, as will be seen by reference to the case of *State v. Edwards,* 89 S. C. 224, in which the Court says:

"The Court correctly charged: 'When an officer has held his office for two or more successive terms, and suit is brought on the last bond, it will be presumed, that the default occurred during the last term, unless the sureties can prove that, as a matter of fact, the principal had been guilty of a defalcation, prior to the execution of the bond sued on.' The presumption is that, when the new bond was given and the new term of office entered upon, the officer had in his hands, all the money which he ought to have had at the beginning of the term covered by the new bond. In Murfree on Official Bonds, sec. 219, the rule is thus stated: 'When an officer is reappointed and gives a new bond, he is presumed to have on hand, all money which his accounts show to be due to the government; consequently, his sureties on his new bond become immediately liable for the amount, and if they allege that no such amount was then on hand, it is incumbent on them to show that the funds with which their principal then stood charged, had been converted by him during the currency of his first bond. They are not, of course, liable for the default of their principal, committed before the execution of their bond, but the onus is upon them to show that it was so committed, for every officer is presumed to have done his duty, until the contrary is proved; and as it is the duty of an officer to have on hand balances charged to him in his official accounts, he is presumed to have such funds in hand."

The case of *State of South Carolina v. Moses,* 18 S. C. 366, is relied upon to show that a contrary doctrine has been established, by this Court.

In that case the action was on the official bond of Moses as clerk of the court for Newberry county, who was appointed by the Judge of the Seventh Circuit, on the 16th of February, 1875, and thereupon entered into bond with

sureties.  He was subsequently required to give a new bond, and accordingly on the 4th of April, 1877, he entered into another bond, with all the other defendants except Montgomery Moses, as his sureties.  The action was brought on the last mentioned bond.  The testimony adduced upon the part of the defendant, was to the effect, that the several sums of money mentioned in the complaint, were all received by Moses, prior to the execution of the bond, upon which suit was brought.  That Moses was succeeded by E. P. Chalmers, who ejected him from the office of clerk, on the 18th of August, 1877.

One of the questions raised by the exceptions was, whether the fact that the money, for which it was alleged Moses failed to account, was received by him prior to the execution of the second bond, relieved the sureties on that bond, from liability, and threw it upon the sureties on the first bond.

The Court, after quoting the provisions of the statute, in regard to the duty of the clerk, when he receives money in his official capacity, used this language:

"If a clerk neglects or refuses to perform his duty, he commits a breach of his official bond, and becomes liable to an action for the penalty.  The default consists, not in receiving the money, but in neglecting or refusing to deposit it in bank; or where it is to be immediately paid out, in not paying out according to the order of the Court.  This is a continuing duty; and the default continues, as long as the performance of such duty is neglected.

"The fact, therefore, that the money in this case was all received by Moses, as clerk, before the execution of the second bond, cannot relieve the sureties on the second bond from liability, if the default continued after the execution of that bond.  It seems that Moses did continue to make default in this respect, after the execution of the bond sued on in this case, and, therefore, the sureties on this bond, as

well as those on the first bond, would be liable for any damages resulting from such default."

It will be readily seen, that the facts of that case, were quite different from those in the case under consideration.

In that case there had been no re-election, and the two bonds were given during the same term of office, and were intended to secure the proper discharge of the same official duties; Moses was holding under the same commission; no new oath had been administered; and in the absence of testimony to the contrary, it is reasonable to presume, that the language of the bonds was identical except as to dates. The distinctions which we have pointed out in the two cases, must be regarded as material, until the case of *Commissioners* v. *Greenwood,* 1 Dess. 451, is overruled. The decisions upon this question, cannot be reconciled by any other construction of the law. What we have said in regard to the case of the *State* v. *Moses,* 18 S. C. 366, is applicable to the cases of *Treasurer* v. *Taylor,* 2 Bail. 524; *Harrison* v. *Ferguson,* 2 Bail. 397, and all the cases upon which the respondent relies.

If the principles which we have stated are correct, then the bonds were executed for the purpose of securing the performance of *two separate and distinct obligations,* and the question of contribution and adjustment of equities, between the sureties on the two bonds, does not arise. But if it should be regarded as properly before the Court for determination, it would be necessary to reverse the ruling of the master, which was affirmed by his Honor, the Circuit Judge.

The question whether the liabilities of the two sureties on the several bonds, as between themselves, is primary or secondary, is not founded upon contract, but is a mere equity, which may be established by parol testimony, and the master erred in not so regarding it. *Field* v. *Pelot,* 1 McMull. Eq. 370.

If Causey received funds during his first term of office, which were converted to his own use, and were not in his possession, when he entered upon the discharge of his duties during his second term of office, it would, most assuredly, be inequitable to hold the sureties on the second bond liable. While, on the other hand, if he was in the actual possession of the funds, when he executed the second bond, and afterwards misappropriated them, it would be equally unjust, to hold the sureties on the first bond, responsible for the default. The only reasonable inference from the testimony is, that Causey converted the funds which were received by him during his first term, to his own use, prior to the time, when he entered upon the discharge of his duties, during his second term.

The failure to pay over public funds as required by statute and the failure to pay over on demand the money which the Court ordered him to pay were defaults chargeable to the first bond. These defaults constituted in their nature *prima facie* evidence that the officer did not have the funds at the beginning of his second term and that, therefore, there was no default in not paying out the funds during that term. This evidence might have been rebutted and the liability of the second bond established by evidence that the funds were on hand, but no such evidence was offered. The primary liability, therefore, must fall on the first bond.

It is important to observe, however, that there was a secondary default during the second term in that the officer at the beginning of his second term did not at once take steps to collect from himself or his sureties on the first bond the money which it was his duty to require to be turned over to himself as his own successor. If another person had succeeded to the office this would have been his obvious duty, and the obligation is the same on one who succeeds himself. If, therefore, it had turned out that loss had occurred from this negligence on the part

of the officer by reason of the sureties on the first bond becoming in the meantime insolvent, there is no doubt that the sureties on the second bond would be liable.

It is the judgment of this Court, that the judgment of the Circuit Court against the defendant, the Gulf & Atlantic Insurance Company, be reversed, except as to the sum of $139.34, claimed by the Hampton Loan & Exchange Bank, and the sum of $20.00, license fees collected subsequent to January, 1909, and that in all other particulars, the judgment be affirmed.

*This case was heard before the election of* MESSRS. JUSTICES WATTS *and* FRASER, *and therefore they did not participate in the decision.*