# 9973

## SMITH, PROBATE JUDGE, v. MOORE *ET AL.*

### (95 S. E. 351.)

1. GUARDIAN AND WARD—ACTION ON BOND—PARTIES.—Under Code Civ. Proc. 1912, sec. 162, providing that a trustee of an express trust may sue without joining with him the person for whose benefit the action is prosecuted, a Judge of Probate may sue on a guardian's bond without joining the wards as parties.

2. GUARDIAN AND WARD—INTEREST ON FUND.—A guardian is liable for interest on money received before the end of the calendar year, where he converts the money, or interest is earned from others during such time.

3. GUARDIAN AND WARD—ACTION ON BOND—COMMISSIONS.—Where guardian has been discharged, and is sued on his bond by the Judge of Probate, he cannot deduct commissions from a judgment in favor of the Judges, under Civ. Code 1912, sec. 3653, allowing commissions for money paid away in credits, debits, legacies, or otherwise during the course and continuance of their managements.

4. GUARDIAN AND WARD—DISBURSEMENT OF FUNDS—LIABILITY.—Where an executor is appointed guardian of children, and takes over insurance money, the money of the wards must be held separate from deceased's estate, and if any of it is applied on debts of the estate the guardian and his bondsmen are liable.

5. HOMESTEAD—WAIVER—DIRECTIONS BY WILL.—Direction by testator that his debts be first paid is not a waiver of homestead rights, but mortgages must be paid.

6. EXECUTORS AND ADMINISTRATORS—HOMESTEAD—POWER OF EXECUTOR TO WAIVE OR PRESERVE.—An executor can neither preserve nor impair homestead rights.

7. GUARDIAN AND WARD—HOMESTEAD RIGHTS OF WARD—DUTY OF GUARDIAN.—A guardian who is also executor of an estate must reserve his ward's homestead right in personalty, and cannot apply it on debts of the estate.

8. GUARDIAN AND WARD—DISBURSING WARD'S MONEY—AUTHORITY.—A guardian of infants cannot purchase the interest of the widow in the homestead for the wards.

9. SUBROGATION—GUARDIAN AND WARD.—Where guardian purchases property for his wards without authority, the transaction must be treated as his own, but he will be subrogated to the rights of the wards.

10. GUARDIAN AND WARD—LIABILITY OF SURETY.—Except in flagrant cases, a surety for a guardian is liable for money received and misappropriated before the execution of the bond.

11. GUARDIAN AND WARD—SURETIES—LIABILITIES AS BETWEEN SURETIES.—
Where a Probate Judge requires a guardian to furnish additional
sureties for the purpose of adding to the security, but not to affect
the existing sureties, the first sureties are primarily liable for mis-
appropriations prior to the signing of the new sureties, but all are
ultimately liable.

Before MAULDIN, J., Bishopville, June, 1915.   Modified
and remanded to carry out reviews expressed.

Action by John M. Smith, as Judge of Probate, against
L. A. Moore, A. E. Skinner, J. M. Hearon and the Equitable
Surety Co., of St. Louis, Mo.   From the decree, plaintiff
and the Equitable Surety Company appeal.

Mr. Thomas H. Tatum, for plaintiff-appellant, cites: As
to error in allowing guardian commissions for paying over
under the decree the amount found due: 11 S. C. 156; Code
of Laws, Dec. 3765; 14 Rich. Eq. 309 (35 S. C. Eq.);
31 S. C. L. 379 (2. Rich.).   Guardian should be charged
interest on money misappropriated from the date of mis-
appropriation: 31 S. C. L. 308 (14 Rich.); 4 Rich. 392.
As to expenditures by the guardian: 82 S. C. 115; 21 S. C.
Eq. (2 Strob.), pp. 42-3; 22 S. C. Eq. (3 Strob.) 33;
Speer's Eq. 29; 2 McC. Eq. 199; 13 S. C. Eq. (Dudley)
12; 18 Cyc. 446-447, notes; 2 Hill's Eq. 467; 92 S. C. 135;
Code, vol. I, secs. 3714-3715; 56 S. C. 173; 57 S. C. 528;
25 S. C. 481; 49 S. C. 41; 47 S. C. 134; 13 S. C. Eq. (Dud-
ley) 30; 18 S. C. L. (2 Bailey) 60; 11 S. C. Eq. (2 Hill)
277; 7 S. C. 317.   As to liability of guardian's sureties: 18
S. C. 372; 2 Bailey 524; McMullen's Eq. 386; 4 Strob. Eq.
149; 45 S. C. 66; 68 S. C. 211; 93 S. C. 300.

Mr. R. W. McLendon, for A. E. Skinner, respondent,
and Messrs. McLeod & Dennis, for J. M. Hearon, respond-
ent, cite: As to allowance of commissions to guardian: Rich.
Eq. Cases 22, par 4; 83 S. C. 164; Civil Code, sec. 3765.
As to failure of Circuit Judge to charge interest against
guardian from the time he received the money of the wards,
instead of from the end of the year: 82 S. C. 116; 11 S. C.

155. *As to expenditures by guardian:* 82 S. C. 115; 1
Strob. Eq. 76; 21 Cyc. 100; Civil Code 1912, sec. 3714.
*As to liability of the Equitable Surety Co. for the defaults
of the guardian:* 18 S. C. 360; 93 S. C. 300; 45 S. C. 66;
McMullen's Eq. 370; 11 Ves. 160; 93 S. C. 311.

*Messrs. Tompkins & Barnett,* for Equitable Surety Co.,
defendant-appellant, cite: *As to error in not allowing guar-
dian commissions for receiving and paying out all such sums
of money, which came into his hands as guardian:* Richard-
son's Equity Cases 22; 4 Rich. Eq. 394; 1 Hill Ch. 183; ·2
Strob. Eq. 31; Acts of the Gen. Assembly 1915, page 100.
*As to expenditures by guardian:* 82 S. C. 115. *As to the
finding of the Circuit Judge that the Equitable Surety Com-
pany was primarily liable as to the bondsmen for the default
of the guardian:* 18 S. C. 360 and 372; 1 Speer's Eq. 309; 9
Rich. 184; 11 S. C. 563-64; 3 McCord 117; 45 S. C. 179;
56 S. C. 319; 45 S. C. 178; Murfree on Official Bonds, sec.
219; 93 S. C. 308; 5 Cyc. 755; Brandt on Guaranty and
Suretyship, vol. I, sec. 108, and vol. II, sec. 625. *The bond
of the Equitable Surety Co. was given at the request of the
Probate Judge, and not at the instance of the sureties:*
McMul. Eq. 387.

April 20, 1917.

The opinion of the Court was delivered by MR. JUSTICE
· GAGE.

The appeal is from a decree of the Circuit Court. The
action is by probate Judge on three bonds made to the pro-
bate Judge by one Moore to secure his right administration
of the estate of five Mooneyhan children in his hands as
guardian. Two of the bonds are signed by Moore and cer-
tain other personal sureties; one and the last made bond is
signed by Moore and a surety company.

The chief issues arise out of the disbursements of the
guardian, and out of the liability of the sureties to the estate,
and to each other. The Circuit Court held:

(1) That the five wards were not necessary or proper parties to this action.    At that the plaintiff excepts.

(2) That the guardian was chargeable only with interest on the insurance money he received from the end of the calendar year in which he received it, and that although he immediately on receipt of the money converted it to his own use.    At that the plaintiff excepts.

(3) That the guardian is entitled to deduct his commissions out of the payment by him of this recovery.    At that the plaintiff excepts.

(4) That the guardian was justified to pay the debts secured and unsecured of the estate of his wards' parent, H. E. Mooneyhan, of which he was the executor, and was not bound to regard the execption of the estate from nonlien debts for a homestead.    At that the plaintiff excepts.

(5) (a) That the guardian was not justified in purchasing for his wards and at $500 the one-sixth interest of the widow of H. E. Mooneyhan in a house and lot of which the testator died seized; (b) but that for such purchase, the guardian is entitled to be subrogated thereabout in the place of the widow.    At the first the surety company excepts; at the second the plaintiff excepts.

(6) That the surety company is liable under the circumstances for a misappropriation of funds by the guardian, done before the surety bond was made.    At that the surety company excepts.

(7) That the surety bond was not furnished at the instance of the individual sureties or of the wards; but pursuant to an understanding had at the time of the appointment of the guardian that such a bond would be furnished. At that the surety company excepts.

(8) That the surety company is first liable to make good the guardian's default, before any liability thereabout attaches to the personal sureties.    At that the surety company excepts.

These in the order named.

1. The wards are plainly not necessary parties to the action. The Code of Procedure provides, at section 162, that a trustee of an express trust may sue without joining with him the person for whose benefit the action is prosecuted. The plaintiff is such a trustee, and he alone may sue for his *cestui que trust*. In this respect the decree is affirmed.

2. There is no denial of the fact that the guardian collected certain moneys due to the wards and immediately converted it to his own use. It is true that the rule is a trustee is not chargeable with interest on funds in his hands until after the end of the calendar year in which he may receive the funds. But it is fundamental that a trustee may not make a profit for himself out of trust funds. If he should, immediately upon its receipts, put out the trust money at interest, the interest so made would not belong to him, but to the trust estate. The same is true if the trustee lends the money to himself; he must pay that which he would under like circumstances collect from another borrower. If it be a common notion that trustees may, in the first year of their trust, use for themselves the trust fund the notion is ill-founded. The trustee need not feel bound to make interest in the calendar year in which he receives the fund; but if he does make interest the accretion does not belong to him. In this respect the decree is modified.

3. The trustee is now confessedly due to his wards some $6,000 and the present issue is: When he shall have paid that recovery, may he deduct from it the usual commission allowed by law for compensation of trustees? The Circuit Court made the allowance on the authority of *Gee v. Hicks,* and a like allowance was made in *Epperson v. Jackson,* 83 S. C. 164, 65 S. E. 217. But facts make the law of a case, and the facts here differ from those of the cases cited.

The statutes (Civ. Code) allows commissions to such trustees for those sums which "they shall pay away (1) in credits, debts, legacies, or otherwise (2) during the course and continuance of their * * * managements or administrations." Sections 3653. (The numerals are supplied.)

In the instant case Moore is not now guardian; he was removed from the trust by order of the probate Court in April, 1914, five months before this action was brought. If, therefore, Moore pays this recovery, he will not do so as guardian, nor will he pay it to the legatees, but to an officer of the Court. Under the very words of the statute which gives the right, Moore is not entitled to reduce the recovery by any alleged commissions due him. He does not come as a trustee executing his commission, but as a defaulter, brought to bar by another trustee; and when payment shall be made, it will be to the probate Judge and not to the beneficiaries. In this respect the decree is modified.

We now approach the disbursements of the guardian. They have been surcharged by the plaintiff. The issues thereabout arise out of the circumstances that Moore was also executor of the will of H. E. Mooneyhan, the father of the wards. That estate had approximately assets and liabilities as follows:

House and lot worth..............$3,000 00
Personal property worth...........   944 60
                              ——————— $3,944 60
Accounts due ...................$1,558 83
Note due ......................   520 04
Mortgage on house and lot........ 1,079 11
Mortgage on house and lot........   501 74
                              ——————— $3,659 72

The chief property of the children, independent of their share of the above, consisted in some $5,500 derived from insurance on the life of H. E. Mooneyhan, payable directly to them, and some $2,500 they got directly from the estate

of John Mooneyhan.    In order to get hold of this fund of
some $8,000 Moore became guardian of the children 30
days after he qualified executor, and then collected the fund.
He mixed up the two estates without regard to the charac-
ter of each.    Out of the common fund thus in his hands, he
paid the debts of H. E. Mooneyhan's estate above described,
and he bought for his wards the one-sixth interest in the
widow in the estate of H. E. Mooneyhan.    And these are
chiefly the acts of the guardian which the plaintiff wards
have challenged.

The two trusts were of a different character, and they
ought to have been separately executed.    It was and is yet
the duty of the executor to administer the estate of H. E.
Mooneyhan according to the rules of law.    That estate has
not yet been administered, and the executor has not yet
received his discharge therefrom.    The executor has never
rendered any account to the probate Court of his doings as
executor, save the one account he made as guardian wherein
he mixed the two estates.

The complaint in the instant action is on the three guar-
dianship bonds.    There is no dispute about the amount of
money Moore received as guardian for his wards, aside from
their father's estate; that is to say, he got some
$8,000 in round figures.    That fund was in no wise
liable for the debts due by the father's estate, no more
than for the debts of a stranger.    It was the duty of the
guardian to invest that fund, pay the increment on it for the
maintenance of the wards, and at their maturity to pay the
principal to them.    He is yet bound to do that, and his
sureties undertook to warrant that he would do that, and
they are yet bound to perform that undertaking.

Coming now to the plaintiff's share of the estate of their
father, H. E. Mooneyhan, the guardian never actually
received anything for his wards from that estate.    The lia-
bilities of it very nearly equalled the assets, and, if a home-

stead for the family shall be deducted from the assets, the estate will not nearly pay its debts.

The right of homestead in the real and personal property is in fact; the direction by the testator that his debts should be first paid was not such a waiver of the homestead as will defeat it. *Beaty v. Richardson,* 56 S. C. 173, 34 S. E. 73, 46 L. R. A. 517. The homestead right lay within a charmed circle, and the executor was unable either to impair it or to preserve it. Of course, the mortgage made by the testator on the house and lot must be paid; it was a waiver of the homestead.

The appellants suggest then that in addition to the fund of $8,000 which Moore received, and as before recited, he is chargeable as matter of law and constructively with the receipt as such guardian of five-sixths of $1,000 for a homestead in the house and lot, and with five-sixths of $500 in the personalty. But so far as the realty is concerned, it has not been converted or disturbed; the plaintiffs may have their homestead interest thereout as they be advised; the right is intact. So far as the homestead in the personalty is concerned, the remedy is not so plain. But the guardian's account, rendered to the probate Court, shows he had from the sale of personal property $666.58; from deposits in bank, $128.02; total, $794.60.

Out of this the plaintiffs were entitled to have for a homestead five-sixths of $500 before any debts were paid, and it will be assumed that the guardian reserved that for his wards. *Johnston v. Johnston,* 2 Hill 501. It is no defense for the guardian to say he paid that money out on the debts of Mooneyhan's estate; it was exempt from such liability.

But we need say nothing more about the administration of Mooneyhan's estate; that is yet to be had. All we decide now is that the only property of the wards which the guardian actually received he got from sources other than the estate of their father; that the guardian is constructively

charged with the receipt of five-sixths of $500 which he ought to have set aside for a homestead for his wards out of the personalty; that the plaintiff's homestead right in the house and lot is intact; and that there was no warrant whatever for the guardian to take the $8,000 fund he had and pay the debts of Mooneyhan's estate. In these respects the decree is modified.

There is yet another expenditure by the guardian which is challenged by the plaintiffs. Moore bought for his wards and at $500 the widow's one-sixth undivided interest in the house and lot, and for his wards and at $1,110.92 the widow's interest in the testator's personal estate. The purchase was without authority of law, and was such an investment, under all circumstances, as will not now be approved.

But as to that transaction, Moore is subrogated to the place of the children. He bought with his own money, for he had no right to use the wards' money. In this respect, the decree is affirmed.

We come now to the issues made by the surety company. The bond of the surety company has six conditions. They are that the guardian, first, shall carefully and handsomely bring up the said minors during minority with necessary meat, etc.; second, shall during minority defend them from hurt of body, loss of goods and lands; third, shall deliver and pay unto the (said minors) when they shall come of age such portions as shall fall due unto them; fourth, shall pay the portions of such as shall die before time to those whom the law shall appoint the same to be paid; fifth, shall render a true and perfect account upon the tuition to him granted, when thereunto required; sixth, shall save and keep harmless the above named probate Judge, and other officers and ministers under him, for and by reason of granting the letters of guardianship.

In some instances the words of the bond have been transposed, but the above is a practically true copy of the instrument and its import.

It is particularly the second condition above quoted that the guardian has breached. He was charged with wasting the estate, and he was removed from his trust April 10, 1914. Thereafter Moore was sued in the probate Court for an accounting and a judgment was rendered against him for some $12,000 on September 7, 1914, after which the instant action on the bonds was almost immediately begun.

The surety company insists (1) that it is not liable at all; (2) but, if liable, it is only after the individual sureties have been exhausted. There are many cases on the subject, and their differing facts makes the law of the subject to appear complex.

In the case at bar there was only one trustee holding by unbroken tenure; all the fund was received before the second bond was made; there was no pretended discharge of the first bond; the second bond was not executed at the instance of the sureties on the first bond, but at the instance of the probate Judge, to keep himself harmless and to protect the wards. The testimony is plain to that end. On the day the new bond was made, the individual sureties were plainly liable for the guardian's receipt of money theretofore had. It was all so received, so that the question of liability of proceeding and succeeding sureties for money received after the execution of a new bond by the same trustee does not arise.

All the cases hold that the surety is liable for funds received by the trustee both before and after the execution of the bond. If the bond was only operative in the interest of its making, it would be a bauble. It may be true, in practice, that the trustee is not generally able to get hold of the trust fund until a bond has been made; but if he does, his duty is to account for it all the same, and the surety undertakes to guarantee that end.

'The words of the contract hold the surety to this, that the guardian shall during minority defend the wards from loss of goods, and shall deliver and pay unto the wards when they shall come of age such portions as shall fall due unto them, and shall keep harmless the probate Judge for granting the letters of guardianship. The guardian has been removed, has been adjudged to be largely in debt to his wards, and has not paid the debt. The bond has been breached.·

The particular suggestion of the surety company is that not only were the funds which the guardian got received before the surety bond was made, but that the guardian also misappropriated those funds to his own use before that time; that is to say, the breach was done before the surety contract which guaranteed faithful performance was made. The suggestion is that if A should have in his hands $100 which belongs to a minor B and which A has used for his own purposes, and if A should then qualify as guardian for B, and X should sign as surety on the bond, that in such a case the surety would not be liable if A should default in payment to B.

The suggestion is not free from difficulty. It is true that Martin, J., Johnson, J., and Fraser, J., all thought that a case might arise in which the surety would not be bound for flagrant breaches of trust before the surety signed. *Treasurer v. Taylor,* 2 Bailey 532, 539; *Bobo v. Vaiden,* 20 S. C. 274. See, also, Gary, C. J., in *State v. Causey,* 93 S. C. 311, 76 S. E. 707. But the instant case does not fully come within that statement of the law. The testimony does not show that the guardian breached his trust by the use of the fund in his own business, and that the probate Judge had reason to suspect the fact. But we think the testimony does not show so flagrant a breach, and so establish the guardian's insolvency at the time the surety bond was made, as to render that instrument ·inoperative to the end it was made. And we conclude that the surety company is liable

for the funds which the guardian had aforetime received, even though the guardian had already used the funds for his own ends.

We come now to the last issue, to wit: Who is primarily liable, as between themselves, the individual sureties or the surety company? That answer depends also, first, upon the facts. In the instant case, as before stated, the new bond was not made on the motion of the individual sureties. Had that been so, then the rule stated by Harper, Ch., in *Pilot v. Field,* would govern; the surety company's bond would be primarily security. And by the same authority, had the wards moved for the new bond, then it would have been collateral to the first.

In the first case, the object would have been to protect primarily the first securities; in the second case, the object would have been to add to the ward's security. The object in the two cases being wholly different, the relief granted would have also been equally different.

The individual sureties did not testify, and so far as the record shows they had no anxiety about their situation. The probate Judge did not undertake to discharge or to relieve the individual sureties, or to in any way modify their situation. He testified he desired additional security, to protect the wards and to protect himself. He testified that he knew of no agreement that the surety company was to relieve the individual sureties, and he had no such agreement with the surety company's agent.

Hames, the surety company's agent, testified he had no recollection that Moore ever said to him that the object of the surety company's bond was to relieve the individual sureties, and he further said he had no intention to relieve the individual sureties. Moore alone testified that his purpose in securing the surety company's bond was to relieve the individual sureties.

We think it is well established by the testimony that there was no intention between the contractors to set the surety

company's bond in the place of the bond of the individual sureties. And we think the testimony proves that the only purpose of the contractors was that the bond of the surety company was to be additional to that of the individual sureties.

The probate Judge then had in view the same object the wards would have had in the event they had moved for additional security; it was to add to the security which was already in hand. So that the justice and the law of the case requires that both classes of surety, the individual and the surety company, shall answer the demand of the wards; but that those sureties who first signed, and whose liability was existent when Moore wasted the fund, and whose status has not been altered, shall be first liable, and the surety company shall be second liable.

In this respect the decree below is modified, and the cause is remanded, to carry out the views herein expressed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HYDRICK, WATTS and FRASER concur.