## 10178

### STATE v. BOWEN.

#### (98 S. E. 864.)

1. EVIDENCE—SHERIFF'S BOND—CERTIFIED COPY.—In an action against the sureties on a sheriff's bond, the admission of a certified copy of the bond in place of the original is proper in view of Civ. Code 1912, sec. 663, providing that such a copy shall be good and sufficient evidence.

2. SHERIFFS AND CONSTABLES — ACTIONS ON BOND — EVIDENCE. — In an action on a sheriff's bond, proof that tax executions turned over to the sheriff were missing was sufficient *prima facie* to fix liability upon his bondsmen for them; it being the sheriff's duty to collect the executions or return them within 90 days.

3. SHERIFFS AND CONSTABLES — ACTIONS ON BOND — EVIDENCE. — In an action on a sheriff's bond for a shortage in the sheriff's account, where it appeared that the sheriff had held the same office for the previous term, it will be presumed that the default occurred during the last term, but such presumption may be rebutted.

4. SHERIFFS AND CONSTABLES—ACTIONS ON BOND—BURDEN OF PROOF.— Where a sheriff holds two succeeding terms of office, his bondsmen for the last term are not responsible for defalcations committed before the execution of his bond or during the first term, but the burden is upon them to prove that it was so committed.

5. SHERIFFS AND CONSTABLES—ACTION ON BONDS—QUESTION FOR JURY.— In an action on a sheriff's bond, where it appeared that the sheriff had also held office during the previous term, and the evidence was susceptible of more than one inference as to the term wherein defalcation occurred, the question was for the jury.

6. SHERIFFS AND CONSTABLES—ACTION ON BONDS—LIABILITY OF SURETY FOR SUCCEEDING TERMS.—Where a sheriff has held office for two succeeding terms, and a shortage in his account appears, the bondsmen on the bond covering the last term, although not liable for the primary defalcation, may be liable for secondary default in the sheriff's failure to account for the money held at the beginning of the last term.

7. EVIDENCE—PAROL EVIDENCE—PRIMARY AND SECONDARY LIABILITY.— In an action against a sheriff's bondsmen, the question whether the liability of the sureties for the first or second term, as between themselves, is primary or secondary is not founded on contract, but is an equity which may be established by parol testimony.

8. SHERIFFS AND CONSTABLES — ACTIONS ON BOND — PARTIES.—Where a sheriff has held succeeding terms of office, and a shortage appears in his accounts, the sureties on the bonds for both terms should be before the Court in order that the rights, equities, and liabilities may be finally determined.

Before PRINCE, J., Kershaw, Fall term, 1917. Reversed.

Action by the State of South Carolina against E. H. Bowen and others. Judgment for plaintiff, and defendants appeal.

*Messrs. Cole. L. Blease* and *M. M. Johnson,* for appellants, submit: *It was error to admit in evidence a certified copy of original bond on file in the State treasurer's office—the original bond was the best evidence:* Vol. I, Code of Laws of S. C. 1912, sec. 3992; Code of Laws of S. C. 1912, sec. 3996. *It was error to direct a verdict for plaintiff in the sum of $9,360.50, when the plaintiff had failed to prove that said shortage had occurred during the last term of Sheriff Huckabee, at which time the defendants were sureties on his bond:* Vol. I, Code of Laws of S. C. 1912, sec. 476; 76 S. E. 707; 5 Rich. Eq. 277; 68 S. E. 753; 75 S. E. 549.

*Messrs. Thomas H. Peeples, Attorney General, Claude N. Sapp, Assistant Attorney General,* and *Solicitor W. H. Cobb,* for the State, respondent, submit: *That the presumption was that the shortage occurred during the sheriff's last term of office, and it was incumbent upon appellants to rebut this presumption:* 89 S. C. 224; 93 S. C. 308.

April 6, 1919.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is an action against the sureties on the last official bond of the late W. W. Huckabee, as sheriff of Kershaw county. He was appointed in October, 1912, to fill an unexpired term, and was elected in November of the same year for a full term, and was commissioned January 1, 1913. He was re-elected, in November, 1916, and commissioned on February 8, 1917, having given the bond here sued on, dated February 1, 1917. He died in office April 18, 1917. On September 17, 1915, the county treasurer turned over to him tax executions for the year 1914, amounting to $11,319.94, and on May 2, 1916, executions for the year 1915, amounting to $11,777.44. On none of these executions did he ever make any return or report to the treasurer.

Upon investigation made after his death, it was found that he had collected $6,492.03 of the executions for 1914, and $4,426.45 of those for 1915, and that he had to his credit in bank $2,149.11, leaving a deficit of $8,769.37. It was also found that some of the executions that had been turned over to him were missing. These amounted to $591.13, making a total shortage of $9,360.50.

The defendants offered no testimony, and the attorney general moved for a directed verdict for the amount of the shortage proved, contending that it should be presumed, in the absence of proof to the contrary, that the entire default occurred during the last term. To this defendants objected, and contended that the evidence adduced made an issue of fact for the jury whether the default occurred during the last or the term previous to the last, and that, if the jury should find that it occurred during the previous term, they would not be liable, but the liability would fall upon the sureties of the bond for that term. The Court sustained the contention of the attorney general and directed a verdict accordingly. From judgment thereon defendants appealed.

There was no error in admitting a certified copy of the bond, instead of requiring production of the original. The statute (section 663, vol. I, Code 1912) provides that such a copy shall be good and sufficient evidence.

Nor was there error in holding that proof that executions that had been turned over to the sheriff were missing was sufficient *prima facie* to fix liability for them upon his bondsmen; for, according to the statute, it was the duty of the sheriff to collect the executions turned over to him, or return them to the treasurer, within 90 days, with his reasons for failing to do so. Therefore, the burdent was upon him and his bondsmen to account for them, or rebut the *prima facie* proof of liability in some way.

But the Court was in error in directing the verdict because the evidence made an issue of fact as to whether the defalcation occurred in the last term, or in the term previous to the last. While it is true, as held in *State v. Edwards,* 89 S. C. 224, 71 S. E. 826, that where an officer has held the same office for two or more terms, and is found short in his accounts, it will be presumed, in the absence of evidence to the contrary, that the default occurred during the last term; yet that is a presumption of fact, which may be rebutted. It arises from the duty of the officer to have in hand all the money which he ought to have at the beginning of his second term. Of course, the bondsmen of the last term are not responsible for a defalcation committed before the execution of their bond; but, in view of the presumption, the burden is upon them to prove that it was so committed. See *State v. Edwards, supra,* and authorities cited. In this case there was evidence tending to show that the defalcation occurred during the previous term, and, as it was susceptible of more than one inference, that issue should have been submitted to the jury.

In *State v. Causey,* 93 S. C. 308, 76 S. E. 707, it was held that the failure of an officer to pay over money when

required by statute, or on demand, pursuant to an order of Court, is *prima facie* evidence of conversion at that time, and that he did not have such funds in his hands at the beginning of the succeeding term. The evidence in this case is that the executions were all turned over to the sheriff during the previous term. The statute (section 476, vol. I, Code 1912) made it the duty of the sheriff to return all tax executions to the treasurer within 90 days after issue thereof, with his report thereon, and, on default, he was liable to prosecution and to an action on his official bond. The time within which he should have returned the executions, with his report thereon, expired long before the commencement of the last term. Therefore the evidence showed *prima facie* that the default occurred during the previous term. If so, the sureties on the bond for that term are at least primarily liable, and these defendants are only secondarily liable.

As pointed out in *State v. Causey, supra,* the sureties on the last bond may be liable, as for a secondary default; that is, for the failure of the sheriff, at the beginning of his last term, to collect from himself, or the sureties on the bond of the previous term, the money which it was his duty to turn over to himself as his own successor. As was there said, if another person had succeeded to the office, this would have been his (the succeeding officer's) obvious duty, and the obligation is the same on one who succeeds himself. If, therefore, it should turn out that loss has occurred from the negligence of the sheriff to perform that duty, as, for instance, if it shall appear that the sureties on that bond have, in the meantime, become insolvent, then the sureties on the last bond would be liable, as for the secondary default.

But obviously that liability cannot be imposed upon them in this case, in the present state of the pleadings and parties;

for no such default is alleged in the complaint, and the sure-
ties on the bond of the previous term are not before
7, 8    the Court.    The sureties on both bonds have the right
to be heard upon the issues arising as to their liability
as between themselves.    As was held in *State v. Causey*, the
question whether the liability of the two sets of sureties, as
between themselves is primary or secondary, is not founded
on contract, but is an equity which may be established by
parol testimony.    It follows that the sureties on both bonds
should be before the Court, in order that the rights, equities,
and liabilities of all parties may be finally determined.

The judgment of the Circuit Court is, therefore, reversed,
and the case is remanded for a new trial, with leave to plain-
tiff to amend by bringing in the sureties on the previous
bond and by alleging the secondary default mentioned.

Judgment reversed.

MESSRS. JUSTICES FRASER and GAGE concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS did
not sit.