SHELL v. YOUNG.

1. Where a homestead is carved out of a single tract of land, and all the rest of this land is sold under order of the court for an amount sufficient to pay a senior judgment based upon a debt contracted prior to the homestead exemption provided for, for the first time, in the Constitution of 1868, the equities of the parties not being reserved in the order of sale, the junior judgment creditors have no right to require a sale of the homestead tract for the purpose of paying this senior judgment, as it has already been paid in law by the sale of the other lands. *State Savings Bank* v. *Harbin*, 18 S. C., 425, approved, but distinguished from this case.

2. Lien creditors should not be postponed to the counsel fees and expenses of the administrator of the debtor in the action instituted by him for sale of his intestate's lands in aid of assets under which these lien creditors received the proceeds of the sales, the suit not having been instituted by the lien creditors, nor necessary to provide payment of their demands.

Before FRASER, J., Laurens, July, 1889.

Action by G. W. Shell, as administrator of L. L. Young, deceased, against Arthur G. Young and others.

The following facts are agreed upon by the counsel as sufficient for the purposes of this appeal:

L. L. Young died intestate in 1885, leaving a small personal estate, and seized of eleven hundred and fifty acres of land, more or less, lying in Laurens County, and survived by his five children, the defendants in this action.

The plaintiff, G. W. Shell, as clerk of the Court of Common Pleas for the said county, applied for and received letters of administration of the personal estate of the intestate at the termination of six months from his death, and soon thereafter, to wit, on the 22nd day of October, 1885, instituted this proceeding in the Probate Court for Laurens, alleging in his complaint the insufficiency of the personal estate to pay the debts of his intestate, and praying that creditors might be called in, the real estate sold to pay debts, &c.

Creditors were accordingly required to establish their demands in this action, and after the expiration of the period fixed by the order of the Probate Court, and the notice published as usual, that court undertook to fix the rank and amount of demands. That court also found it necessary to sell the real estate in order to pay off debts; and it accordingly sold all the real estate of the said intestate, except that laid off for homestead, which is hereinafter more fully described, on the first Monday in January, 1889. The tract being large, and portions of it under mortgage to different parties, it was divided and sold in 8 tracts by consent of all parties, making, at the time of sale, with the homestead already laid off, 9 tracts in all. None of these mortgages cover any part of the homestead tract.

The said sale of real estate realized $4,835. The demands having lien (judgments and mortgages) amount to upwards of $4,-550. The counsel fees, costs of suit, and other expenses of administration amount to upwards of $800. The debts by simple contract, unsecured by liens, amount to about $6,000. There is no personal estate applicable to debts, all of it having been assigned to intestate's children for homestead.

All of the intestate's debts were contracted after the year 1868,

except a claim heretofore owned and sued to judgment by George P. Copeland, and now owned by James W. Copeland, which arose by a note executed in 1862. This went to judgment in 1880, and there still remains unpaid upon it upwards of $1,560. It is conceded that this is the only claim which of itself would prevent the allowance of the homestead exemption to the defendants, children of the intestate.

It was attempted on the part of these children to have a homestead in the lands of the intestate set apart to them in this action, but upon objection made to the jurisdiction of the Probate Court in such matters, that effort was abandoned. And thereupon Edmonds T. Brown, a judgment creditor, undertook to levy his execution on all the land of the intestate. Application was thereupon made to the sheriff to have a homestead admeasured to the children, there being no wife surviving the intestate. Appraisers for this purpose were appointed by the sheriff. These duly made their return, and thereby undertook to set apart to the children 178 acres of land, embracing, among other things, the dwelling house of the intestate.

The return of the appraisers was excepted to on two grounds: 1st. Because the property allowed by them was in excess of the constitutional and statutory provision; and, 2nd, because no homestead whatever is allowable as against the Copeland judgment, which, as the other creditors insisted, ought to be collected out of any land otherwise allowable for homestead, or at least should exhaust such homestead before partaking in the general estate applicable to creditors in general. His honor, Judge Norton, who heard the return and exceptions, decreed against the 1st exception, but sustained the 2nd, and ordered that unless the persons claiming homestead paid the Copeland judgment within 60 days, the return should be set aside and the proceedings in homestead dismissed. From this decree the children appealed. The Supreme Court affirmed the decree, except so much thereof as required the payment of the Copeland judgment in 60 days, &c. That court indicated that the proceeding was not the proper one for the adjustment of the equities involved in the controversy.[1] Subsequent to the Supreme Court decision in the matter of the homestead

[1] See *Ex parte Young*, 29 S. C., 298.

herein referred to, the sheriff was ordered by the owner of the Copeland judgment to make his money out of the homestead, and he accordingly advertised it for sale, but was enjoined by the Court of Probate from selling, and the said judgment was required by said Court to be settled in these proceedings, it having already been presented and established therein.

Thereafter, to wit, in January, 1889, the Probate Court resumed the investigation of this cause, and, after hearing evidence and argument on the matter involved, pronounced judgment, deciding, among other things, that Messrs. Ball & Watts, as attorneys and counsel for the administrator and the estate, were entitled to a fee of $500, which includes their cost in this action, and is to be paid before creditors of intestate, and further deciding that the Copeland judgment shall be paid, according to its rank, out of the proceeds of sales in the court, and that if such proceeds shall not suffice to extinguish, then it may be enforced against the land set apart for homestead.

The said proceeds of sale are more than sufficient to pay the Copeland judgment, if applied to judgments according to seniority. If, however, these proceeds are so applied, and including that judgment, there will remain wholly unpaid all the unsecured demands and several judgments. The Copeland judgment is the oldest lien except two: that of the National Bank of Newberry, which amounts to less than $600, and that of Maybin, as survivor, amounting to $200 or $300.

From this judgment certain creditors appealed, to wit, the National Bank of Newberry, J. W. Copeland, and L. W. Floyd, upon the grounds set forth in their several notices and ground of appeal.

This statement was agreed to by all the counsel, except so much as undertakes to state what Judge Norton and the Supreme Court decided in *Ex parte Young*, in the matter setting off the homestead, as to which the decision must speak for itself.

The Circuit decree was as follows:

The case was heard by me at the term of the court held in July, 1889, on appeal from the judgment of the Probate Court. The questions raised on this appeal are: 1. As to counsel fees for the attorneys for the administrator. 2. As to the rights of junior

30 - 32

judgment creditors and creditors who are unsecured to require a judgment creditor having a lien on the homestead, and therefore a right to sell it for the payment of his debt, to sell the homestead so as to leave the balance of the estate to be applied to their claims, and thus defeat the claim of homestead.

I. As to the counsel fees. The judge of probate states in his decree that there was no objection made at the hearing before him as to the amount of the fee charged being reasonable, and there is nothing in the agreed statement of facts to show to the contrary. I do not know any authority by which this court can divest liens on real estate, either by mortgages or judgments, so as to pay either general costs or counsel fees out of the sale of real estate before these lien debts are paid. If these liens were subordinate to such claims, then all their value as securities for debts would be destroyed. As real estates are assets for the payment of debts, and it is the duty of the administrator to protect the whole estate from unjust claims, I see no reason why the fee should not be paid out of the fund in this case, if anything is left after paying off liens' and other matters provided for in the decree, and as to which there has been no appeal.

II. As to the homestead. If the claim set up by the excepting creditors is good, I see no reason why the homestead as to personalty should not also be subjected to the payment of the Copeland judgment. Personalty is first applicable to the payment of debts in exoneration of real estate. These creditors rely on the case of *The Bank* v. *Harbin*, 18 S. C., 425. I have no right to question the authority of that case. The case before me differs from it in several important particulars.

1. In that case all the lands were sold and *all equities were reserved. See Circuit decree at page* 426. In this case there has been no such reservation, and land enough exclusive of that set off as homestead has been sold to pay the Copeland judgment in its order of priority. In whatever way it has been done, the sale has been made, and the proceeds are by law applicable to the judgments in their order. There is enough in hand to pay this judgment, and it seems that any other sale under this judgment would be void.

2. In that case the liens on the homestead were not general,

but *specific,* and created by the *act* of the debtor; not such an act as would be the foundation of a general lien created a judgment, but such an act as created a specific lien, itself superior to the claim of homestead, and perhaps may be said to have placed the property outside of the scope of the homestead law.

3. In that case there were two adjoining tracts, called and known by different names, and therefore *two* funds. In this case there is but one tract of land, all covered by the liens of the judgments; and it ought not to make any difference that portions of it have been mortgaged by the intestate in his life-time, or that the same has been sold in nine parcels by the decree of the judge of probate. The superiority of the Copeland judgment prevails only as to the homestead; and as to the land which has been sold, it can only be paid in its order as to date; and if not thus paid, its claim on the homestead still remains.

4. In that case all the liens were acquired before the amendment of the constitution in 1880 as to the homestead, and when the homestead was confined to "the dwelling house, outbuildings, and lands appurtenant." As nothing appears to the contrary, I must assume that all of these liens, except the Copeland judgment, were created to secure debts contracted since the amendment of 1880. The right of homestead now extends to the whole of the real estate, and if the Copeland judgment should be thrown on the 173 acres set off for the homestead in this case, the homestead could be claimed out of the fund in court arising from the sale of the balance of the tract.

Copeland has a right to his money, and not to the land; and if there is one thousand dollars in court applicable to his judgment, there is no good reason why he should be allowed to have a sale of the homestead to satisfy a mere technical right, if indeed he has any, to sell the homestead under the judgment. I do not understand that there has been any exceptions as to the payment of fifty dollars to the administrator, or of the costs or taxes, and the decree will not be disturbed as to these.

It is, therefore, ordered and adjudged, that the judgment of the judge of probate be, and hereby is, in all respects, confirmed, except that the counsel fees shall be paid out of the proceeds of the sale of the real estate after the other payments provided for

in the said judgment.   It is ordered, that the case be remanded to the probate court for such further orders as may be necessary or proper in the case.

All the parties appealed, except the homestead claimants and J. W. Copeland.

*Messrs. Ball & Watts,* for plaintiff.

*Mr. J. F. J. Caldwell,* for the National Bank of Newberry.

*Messrs. O. L. Schumpert* and *L. W. Simkins,* for L. W. Floyd.

*Messrs. Haskell & Dial,* for J. W. Copeland.

*Mr. H. Y. Simpson,* for the children of the intestate.

April 9, 1890.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   On the 22d of October, 1885, this proceeding was instituted in the Court of Probate by the plaintiff, alleging that the personal estate of his intestate was insufficient for the payment of his debts, and asking that creditors be called in to prove their demands, and the real estate sold for payment of debts.   Under this call sundry creditors came in and established their demands, among whom were the bank of Newberry, J. W. Copeland, as assignee of George P. Copeland, and L. W. Floyd; the claims of the bank and Copeland having been reduced to judgment against the intestate in his life-time, and the latter being based on a cause of action arising prior to the adoption of the present constitution.   In the meantime another judgment creditor, Edmond T. Brown, having levied on the lands of intestate, his minor children, who are defendants herein, applied for a homestead, when 178 acres of the land were assigned to them as such, together with what little personal property was left by the intestate.   The real estate consisted of a single tract of land, containing about 1,150 acres, and portions of it being under mortgage to different parties, that portion of it which remained after cutting off the homestead of 178 acres, was divided into eight parcels, and the same was so sold, by consent

of all parties, under an order of the Court of Probate, and the proceeds of such sale, amounting to a sum more than sufficient to pay the Copeland judgment, as well as those senior to it, are now in the hands of that court.

It was claimed by the creditors that Copeland, being the only one who could resort to the homestead for payment of his judgment, by reason of the fact that the cause of action upon which it was based ante-dated the constitution, should be required to do so, before resorting to the proceeds of the sale of the lands over and above the homestead; but the judge of probate held otherwise, and adjudged that the proceeds of the sale in the hands of the court should be applied first to the payment of the costs of the proceedings, together with a counsel fee to the attorneys of the administrator, and a specific sum of money to the administrator in lieu of all commissions, as well as any taxes that might be due on the land, and that the balance of the proceeds should be applied to the liens which had been established, in the order of their rank; and in the event that such proceeds should prove insufficient to satisfy Copeland's judgment in full, then he be allowed to subject the homestead to the payment of such balance as might remain unpaid.

From this decree the bank, Floyd, and Copeland all appealed, the former two substantially upon the ground that the judge of probate erred in not requiring Copeland to exhaust the homestead before he could be allowed to participate in the proceeds of the sale of the land outside of the homestead, and Copeland upon the same ground, as well as upon the further ground that the judge of probate erred in giving the counsel fee of the attorneys of the administrator priority over the liens.   These appeals were heard by his honor, Judge Fraser, who rendered judgment dismissing all of the appeals, in so far as they imputed error to the judge of probate in not requiring Copeland first to exhaust the homestead before he could be allowed to participate in the proceeds of the sale in the hands of the court, but sustaining so much of Copeland's appeal as alleged error in giving the counsel fee of the administrator priority over the liens of creditors.

From this judgment the Bank of Newberry and L. W. Floyd now appeal, substantially upon the same ground upon which their

appeal from the decree of the judge of probate rested, and the administrator also appeals, alleging error in not sustaining the decree of the judge of probate in respect to the counsel fee of his attorneys; and that in any event it was error to postpone the payment of such fee to any lien creditor other than Copeland, who was the only one of such creditors who appealed from the decree on that ground.

The real question presented by the appeals of the Bank of Newberry and L. W. Floyd is, whether the other creditors of the intestate, who cannot resort to the homestead for payment of their claims, have now any equity to require Copeland, who could have subjected the homestead to the payment of his debt, to exhaust the homestead before he can be allowed to participate in the proceeds of the sale of the land over and above the homestead. These appellants rest their position on the case of *Bank* v. *Harbin* (18 S. C., 425), and the doctrine therein established. If the principles there laid down can be properly applied to the facts of the case now under consideration, then, unquestionably, the position taken by appellants should be sustained; so that the practical question is, whether the principles announced in that case are applicable to the present case. The Circuit Judge, while recognizing the authority of that case, undertook to distinguish it in several particulars from the present case, any one of which he seemed to think rendered that case inapplicable.

Now, while we do not propose to indorse all of the distinctions drawn by the Circuit Judge between the two cases, we do think that the one first mentioned by him is quite sufficient to withdraw this case from the operation of the rule laid down and applied in the case of *Bank* v. *Harbin.* There the land was sold under an order reserving all the equities of the parties, while here it was sold without any such reservation; and hence the moment it was sold the proceeds became at once applicable to the payment of the liens in the order of their priority, and though not in fact, must be regarded in law, as actually so applied; and if so, then there were no longer two sets of creditors—one having a lien on two funds, and the other having a lien upon only one of those funds—for the persons who might previously have been regarded as standing in that relation to each other could no long-

er be regarded as creditors at all, as in the view of the law their claims had been satisfied. As the Circuit Judge very pertinently suggests, after the land had been sold for the express purpose of paying the debts, for an amount sufficient to pay Copeland's judgment, as it is conceded, any other levy and sale under such judgment might well be regarded as wholly without authority, and therefore void.

In the case of *Jones* v. *Miller* (17 S. C., 380), the question was whether a widow was entitled to dower in certain lands which had been sold under judgments obtained against her husband in his life-time. The defence was that some of the judgments under which the lands were sold antedated the marriage, while others were obtained subsequent to the marriage. It appeared that a large amount of personal property, in addition to the lands, was sold on the same day; and the court, finding as matter of fact that the amount for which the personal property was sold was sufficient to satisfy the ante-nuptial judgments, held that the proceeds of the sale of the personal property must be regarded as instantly applied to the ante-nuptial judgments, whereby they were satisfied, and that the lands must be regarded as sold under the judgments obtained subsequent to the marriage, and therefore subject to the right of dower; although the court expressly recognized the doctrine that the lien of the ante-nuptial judgments was paramount to the claim of dower, and would therefore have been sufficient to have defeated the claim but for the fact that the ante-nuptial judgments were satisfied by the proceeds of the sale of the personal property, which, though not in fact, were in law, applied to them the moment the sale was made.

The decision in that case rested alone upon the principle which we have applied to this case, that where property is sold to satisfy judgments, the proceeds of such sale must be regarded as instantly applied to their satisfaction, though in fact the application, as is most usually the case, may not really be made until afterwards. For in that case the property was all sold on the same day—one continuous proceeding—and yet the court, assuming, in the absence of evidence to the contrary, that the personal property was sold first, held that the proceeds of the sale of that

must be regarded as instantly applied to the satisfaction of the ante-nuptial judgments, whereby the sale of the lands, following immediately afterwards on the same day, should be regarded as made free from the lien of the ante-nuptial judgments, which were the only liens paramount to the claim of the dower. Where, however, the sale is made, as in *Bank* v. *Harbin, supra,* under an order reserving the equities of the parties, the rule above stated would not apply, and the application of the proceeds of the sale could not be regarded as made, either in fact or in law, until such equities have been adjusted.

It seems to us, therefore, that the conditions necessary to the application of the rule invoked by appellants do not exist in this case, and that they have failed to set up any equities to which they may have been entitled at the proper time. See *Ex parte Kurtz,* 24 S. C., 468, and *Ex parte Carraway,* 28 *Id.,* 233.

The only remaining inquiry is that presented by the appeal of the plaintiff in reference to the counsel fee of his attorneys. Inasmuch as none of the lien creditors except Copeland appealed from that portion of the decree of the judge of probate which gave priority to this claim over all the lien creditors, they are all, except Copeland, precluded from raising the question; and it is therefore necessary to consider only whether Copeland should be postponed to the claim for counsel fees. We agree with the Circuit Judge that there is no authority for postponing a lien creditor until counsel fees and expenses have been paid, unless it appears that the proceeding in which such fees and expenses were incurred was instituted at the instance of the lien creditor, or was necessary properly to provide for the payment of his claim. Now, in this case it is not pretended that this proceeding was commenced at the instance of Copeland, and we think it clear that it was not calculated to promote his interest, but rather the reverse. Having a judgment which was enforceable against the whole of the real estate, including the homestead, he had an expeditious and inexpensive mode of enforcing his claim; and this proceeding, instituted by the administrator, tended rather to delay than to promote the enforcement of his rights.

It seems to us, therefore, that so much of the judgment of the Circuit Judge should be reversed as gives the lien creditors other

than Copeland a preference over the counsel fees, on the ground that they are concluded by acquiescence in the decree of the judge of probate, but that in all other respects it should be affirmed; and such is the judgment of this court.