## *EX PARTE* CHAPPELL

### *IN RE* HUDGENS v. SULLIVAN.

1. INFERENCES FROM UNDISPUTED FACTS.—Where the facts are undisputed, but the judge of probate and Circuit Judge deduce different inferences therefrom, this court is entirely at liberty to say which are correct.

2. LACHES—DELAYS OF THE LAW.—Where an administrator failed to obtain judgment for six years after the filing of the referee's report in the cause, but there is no evidence to show that he or his attorney (who was instructed to press the claim) were responsible for this delay, no ground exists for charging the administrator with such negligence as would render him chargeable for a consequent loss of the debt.

3. LIABILITY OF LEGATEES FOR EXECUTOR'S CONTRACT—LACHES.—Legatees cannot be required to pay for professional services rendered by an attorney for the benefit of the estate under the employment of an insolvent executor, unless it is made to appear that the executor was in ad-

vance to the estate. Therefore the administrator of the attorney cannot be held liable for a failure to prosecute the claim against such legatees within the time when the claim, if valid, would not have been barred by the statute of limitations.

Before NORTON, J., Laurens, June, 1890.

Petition of W. T. Chappell *in re* James and J. B. Hudgens, executors, against J. D. Sullivan, administrator, and others, to require the defendant Sullivan to account for his administration of the estate of his intestate, C. P. Sullivan, and to pay a judgment obtained by plaintiffs against C. P. Sullivan, and now owned by the petitioner, a former decree of the Probate Court in 1882 having ordered all funds thereafter received by said administrator to be applied to said judgment. Other facts are stated in the opinion of this court.

*Messrs. Haskell & Dial*, for appellant.

*Mr. B. W. Ball*, contra.

March 13, 1891.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The principal case in which this petition was filed *in re* was instituted in the Court of Probate by certain judgment creditors of C. P. Sullivan against his administrator and heirs at law, for the purpose of obtaining an accounting from the administrator and a settlement of the estate. The main purpose of the proceeding by the appellant was to hold Jared D. Sullivan, as administrator of C. P. Sullivan, liable for a claim in favor of said C. P. Sullivan against Wm. Young, executor of Samuel Young, upon the ground that he had not used due diligence in enforcing the same.

It seems that C. P. Sullivan commenced an action in January, 1876, against Wm. Young, as executor of Sam'l Young, to recover the amount due him for professional services rendered said Wm. Young, as executor as aforesaid. The case was referred to a referee, who filed his report on the 13th of June, 1876, recommending judgment in favor of Sullivan for the sum of $1,895. On the 27th of July, 1876, C. P. Sullivan departed this life in-

testate, and on the 2nd of September, 1876, letters of adminis-
tration upon his personal estate were duly granted to Jared D.
Sullivan, one of the defendants herein, who was thereafter duly
substituted in place of his intestate as plaintiff in said action
against Wm. Young, as executor as aforesaid. Exceptions seem
to have been filed to the report of the referee, which, however,
were not heard until the 28th of February, 1882, when the same
were overruled and the report was confirmed.

In the meantime, to wit, on the 7th of April, 1876, the said Wm.
Young had conveyed to Mary Y. Garlington and Geo. F. Young,
grandchildren of the said Samuel Young, all of his real estate, in
satisfaction of legacies to them, which had been charged on the
said real estate. It seems that Samuel Young died in 1865,
seized and possessed of a very large estate, both real and person-
al, all of which he gave to his son, the said William Young,
charged, however, with the payment of the legacies to his two
grandchildren as above stated. It appears also that the large
personal estate given to the executor, Wm. Young, was either
wasted or dissipated by the executor, who became entirely insol-
vent, but at what time is not stated, though it is to be inferred
that he became insolvent before April, 1876, when he conveyed
the real estate to the two grandchildren, as the testimony is that
the value of the real estate was not sufficient to pay in full the
legacies to the grandchildren.

It further appears that some time in 1886, the defendant,
Jared D. Sullivan, as administrator of C. P. Sullivan, com-
menced an action, as we understand it, against the legatees under
the will of Samuel Young, to whom the land had been conveyed
by the executor in satisfaction of their legacies, for the purpose
of subjecting the land to the payment of the judgment recovered
by the administrator of C. P. Sullivan against Wm. Young, as
executor of Sam'l Young, which action was, on the 28th of Feb-
ruary, 1888, dismissed as barred by the statute of limitations.

Under this state of facts, the judge of probate held that Jared
D. Sullivan, as administrator of C. P. Sullivan, had been guilty
of such negligence in enforcing the claim of his intestate against
Wm. Young, as executor of Sam'l Young, as should render him
liable for the full amount of the same, and rendered his decree

accordingly, which, on appeal to the Circuit Court, was reversed in this particular. From this judgment the petitioner, W. T. Chappell, appeals upon the several grounds set out in the record, which need not be stated here, as the sole question is, whether the Circuit Judge erred in holding that there was no such negligence on the part of the administrator of C. P. Sullivan as would render him liable for the debt in question.

It will be observed that there is no controversy as to the facts in the case, the difference between the judge of probate and the Circuit Judge being in the inference proper to be drawn from the undisputed facts, and hence we are not embarrassed by the rules in regard to concurrent or conflicting findings of fact in any of the stages of the case below, but are entirely at liberty to say what are the correct inferences to be drawn from the undisputed facts. *Ashley* v. *Holman*, 25 S. C., 394.

The judge of probate seems to have been of opinion that the administrator was guilty of negligence in two respects. 1st. In failing to bring the case to a hearing promptly after the report was filed. 2nd. In neglecting to commence proceedings to subject the lands in the hands of the legatees to the payment of the debt due his intestate within due time. As we have seen, a period of upwards of five years elapsed between the filing of the report of the referee and the hearing of the exceptions thereto, but there is no evidence tending to show that either the administrator or his counsel, whom he employed very soon after he took charge of the estate, giving him special directions to press the collection of this claim against Wm. Young, as executor of Samuel Young, were in any way responsible for this delay. Unfortunately, experience teaches us that such delays are not uncommon—in fact, have passed into a proverb—and we agree with the Circuit Judge that such delay, without some evidence tending to show that it was caused by the *laches* of the party or his attorney, is not sufficient to fix upon the administrator such negligence as would render him chargeable with the debt.

As to the second ground, upon which the charge of negligence is based, we agree with the Circuit Judge. It is more than

doubtful whether the administrator, even by the promptest action could have succeeded in making the legatees liable. This never was a debt of the testator, but was a debt of his executor individually, which neither C. P. Sullivan nor his administrator could have fixed upon the assets of the estate of Samuel Young, except under circumstances not shown to exist in this case, and which probably never could have been shown. The debt in question arose out of a contract between Sullivan and Wm. Young, and the undoubted general rule is, that the creditor can look alone to him with whom he has contracted for the payment of his debt. As is said in *Guerry* v. *Capers*, Bail. Eq., 159 : "Persons dealing with the executor can therefore have no right to look to the estate for remuneration, except in an extraordinary case;" and that exception is stated in a subsequent part of the opinion in these words : "As a general guide, it may be laid down that whenever the trustee, if he had paid the debt out of his own funds, would be in advance to the trust estate, and would be entitled to be reimbursed out of it, his creditor may, if the trustee is insolvent, be allowed to take his place, and be paid out of the estate to the same extent. This constitutes, however, the only exception to the general rule which we are prepared to recognize." In that case the executor had wasted the income of the estate, leaving a large balance due by him on that account, and the effort was to subject the remaining assets of the estate to the payment of certain debts contracted by the executor for the benefit of the estate, and it was held that the creditors must look to the executor with whom they had contracted, there being no evidence that the executor had ever been in advance to the estate, but the contrary being the fact.

In *Manigault* v. *Deas* (Bail.-Eq., 283), a similar effort was made, and the court there held : "As a general rule the income of the estate is the fund for current expenses. This fund, in the hands of the executrix, is that to which the creditor may have the right to look for payment; and in some cases he may have the aid of the court to make it available to him. But before he could make a fund out of the hands of the executrix or the capital of the estate liable, he must show, first, the necessity of the debt for the trust estate ; secondly, that the executrix has no funds of

the estate in her hands ; and thirdly, her insolvency." As in that case the creditors failed to show that the executrix had no funds of the estate in her hands, but, on the contrary, it appeared that she was largely in arrear to her testator's estate, it was held that the creditors must look to her for payment, and not to the estate of her testator. So also in *Henshaw* v. *Freer* (Bail. Eq., 311), it was held that where services have been rendered to an estate under a contract with the executor, the creditor cannot demand payment out of the estate, even though the executor is insolvent, unless he shows that the executor is not in debt to the estate. The principles upon which these cases rest have been recognized and followed in a number of subsequent cases, cited in a note to the case of *Guerry* v. *Capers, supra,* as reported in the 2nd edition of Bailey's Equity Reports, p. 159.

Applying these principles to the case under consideration, it seems quite clear that the administrator of C. P. Sullivan could not have recovered in his action against the legatees above referred to, even if it had been commenced in time to avoid the bar of the statute of limitations, and hence if there was any negligence in commencing that action, it was harmless. For while the contract out of which the debt arose might have been one for the benefit of the estate of the testator, Samuel Young, and while it did appear that the executor, Wm. Young, was insolvent, yet the other essential element—that the executor ever had been in advance to the estate—was not only entirely lacking, but the testimony affords good reason to believe that he was always in arrear.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.