13559

GLENN v. WORTHY *ET AL.*

(168 S. E., 705)

264

January, 1929.

272

280

284

*Mr. R. L. Douglas,* for appellants,

*Messrs. Gaston, Hamilton & Gaston* and *McDonald, Macaulay & McDonald,* for respondent,

January 20, 1933.

The opinion of the Court was delivered by Mr. W. C. Cothran, Acting Associate Justice.

On June 30, 1920, J. L. Worthy died intestate, leaving as his only heirs at law seven minor children. Hope Worthy, eighteen years of age, was the eldest, and was the only child of the first marriage. The other six, children of a second marriage, ranged in years from two to thirteen. On July 13, 1920, James H. Glenn, the respondent herein, a practicing attorney of the Chester Bar, was appointed by the Probate Judge as guardian of Hope Worthy, and his bond was fixed at $2,000.00. On the same day he was appointed guardian of the other six children; bond being fixed at $12,000.00. On July 21, 1920, he was appointed administrator of the estate of J. L. Worthy, and his bond was fixed at $30,000.00. On December 20, 1923, James H. Glenn made his final return as guardian of Hope Worthy, and received his discharge. No interest of Hope Worthy is herein involved.

For the benefit of his six minor children, the intestate carried six policies of insurance in the sum of $1,000.00 each. By August 10, 1920, all six of these policies had been collected, and the guardian had on hand the proceeds of same amounting to $6,000.00. Some of this money was loaned on real estate mortgages, but it appearing that all of those loans were collected in full with interest, no further mention need be made of them.

No returns were filed by the respondent herein as guardian until the early part of 1929, and the return then filed was as of December 28, 1928, although he had been handling the guardianship funds since July, 1920.

On June 23, 1921, the respondent filed his first annual return as administrator which showed that there had come into his hands as such administrator during the first year the sum of $5,223.28; the report of the auditor, made later, shows this amount as $5,238.14. No further returns were filed until the early part of the year 1929, when returns were filed as both administrator and guardian. The return made as of

December 28, 1928, was refused by the Probate Judge, for the reason that both accounts "were all mixed up" and he could not undertsand the nature of the return. On January 2, 1929, a suit was brought in the Court of Common Pleas for Chester County by the administrator guardian setting forth various facts and praying judgment:

(a) That he be allowed to account for his actions and doings as administrator guardian.

(b) That he be directed how much further to proceed as both administrator and guardian.

(c) That the Court authorize partition of the one-seventh interests of Hope Worthy and Hood Worthy.

(d) That certain of the property be sold in aid of assets.

(e) That the amount due by the administrator to the guardian be reconciled and payment directed, and that any other debts be declared liens upon the land.

This complaint, which was signed by Glenn & Macaulay, as attorneys for the plaintiff, brought in all parties in interest. A. L. Gaston, Esq., was appointed guardian *ad litem* for the minor defendant Mary Elizabeth Worthy, and R. L. Douglas, Esq., was appointed guardian *ad litem* for the other minor defendants. Formal answers were filed by the guardians *ad litem* alleging the minority of the defendants and submitting the rights of the minor defendants to the Court for protection.

During the year 1929, six references were held by John M. Wise, Esq., who had been appointed special referee by order of Honorable J. K. Henry, Circuit Judge. The special referee filed his report after securing the services of an expert accountant to assist him in making up a statement of the accounts. An appeal was taken from this report by both parties, and, it appearing that the accountant had omitted from his statement various items between James H. Glenn, individually, and James H. Glenn, as administrator and guardian, involving about $10,000.00, Judge Sease refused to pass upon any of the questions presented by the appeal and

remanded the case for a more complete report by the special referee. Two more references were held, and a new statement prepared by the accountant. The first report of the special referee was filed in November, 1930, and from it the present appellants appealed. This appeal was heard by Judge Ramage, and his decree was filed in July, 1931. The case now comes to this Court on appeal from the decree of Judge Ramage.

From the various references, the report of the special referee, and the decree of Judge Ramage, we have gathered additional facts pertinent to this case; a brief narrative of them being necessary to a more complete understanding.

When J. L. Worthy died in June, 1920, he was the owner of a large tract of land of nearly 600 acres in Chester County, farming implements, machinery, stock, and cattle, and also was the owner of a small country store. His crop was already planted and "lay by" time was near at hand when he was stricken with typhoid fever and died. He had made contracts with various tenants, had borrowed money from a bank in Chester, and had assumed other obligations which rendered it necessary for the administrator to continue the farming operations for the remainder of the year 1920. *Smith v. Smith,* 105 S. C., 393, 89 S. E., 1032, to be referred to hereafter.

The administrator applied to the Probate Judge for permission to operate the farm for the year 1921, and from the operation made a small profit. He likewise secured an order from the Probate Judge to operate the farm for the year 1922, and again made a small profit. After that, and probably up to the present, the farm was rented.

The administrator also applied to the Probate Judge for an order permitting him, as administrator, to borrow from himself, as guardian, certain of the guardianship funds to be used in the payment of debts due by the estate, and also certain debts or advances made by himself. This was allowed, and $3,000.00 were so taken over from the guardian-

ship estate by the administrator. The administrator also advanced his own funds in the farming expenses, taxes, insurance, etc., and claims that he is entitled to a refund of same.

The figures as taken from the statement of the auditor, reported by the special referee and confirmed by the Circuit Judge, are:

Amount due the wards by the Worthy estate. . . . .$3,942.06
Amount due James H. Glenn by the Worthy estate    899.56
                                                 _____
Total debt of the estate. . . . . . . . . . . . . . . . . . .$4,841.62

Each child's part of the debt is one-seventh each, $696.66, and this is made a charge of one-seventh each on the land of the estate. However, each child is held to be allowed a credit of such portion of the $1,000.00 insurance as has not been expended upon maintenance and support; the amount being different in the case of each child. By the decree, each child is likewise charged with a one-seventh amount of all costs and expenses of this suit. Just what will be the total amount of costs has not yet been determined, but the following items are listed as a part of the Court costs:

J. M. Wise, special referee. . . . . . . . . . . . . . . . . .$  250.00
A. L. Gaston, attorney for administrator. . . . . . . . .   250.00
McDonald, Macaulay & McDonald, attorneys for
    administrator  . . . . . . . . . . . . . . . . . . . . . . . . .   250.00
Stenographer  . . . . . . . . . . . . . . . . . . . . . . . . . . .    88.00
James McLarnon, accountant. . . . . . . . . . . . . . . .   250.00
                                                             _____
Total  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$1,088.00

Having determined this indebtedness, the Circuit Judge, confirming the report of the special referee, held that the children are liable to the administrator for this amount, and that the administrator could offset his losses of administration with the money yet in his hands as guardian, to wit, about $1,890.00. The decree also provided that the admin-

istrator should have judgment against the minors for the established debt, and also all costs and expenses.

The appeal from this decree sets out six principal issues to be determined, and while we may not follow the exact order adopted by the appellants, we will endeavor to dispose of all grounds of appeal.

The grounds of appeal may be briefly stated as follows:

(1) Can the administrator reimburse himself for losses sustained by operating the farm?

(2) Can the guardian be relieved of liability to his wards for the expenditure of $3,000.00 of their money upon an order signed by the Probate Judge, to use said money for the payment of debts of the estate?

(3) This is practically the same as No. 1.

(4) Can the administrator have judgment against the heirs and a lien on their real estate for losses incurred in operating the farm without authority?

(5) Practically the same as No. 4.

(6) Relative to charging costs and expenses and attorney's fees to the appellants without any hearing being afforded their attorney upon this question.

The intestate, who was engaged in both farming and mercantile operations at the time of his death in the middle of the year, left many contracts to be completed, and it was unquestionably the duty of the administrator to take charge of the business for the remainder of the year. In the case of *Smith v. Smith*, above mentioned, the Court holds at pages 398 and 399 of 105 S. C., 89 S. E., 1032, 1034; as follows: "The evidence shows when Smith died that there were a large number of outstanding contracts made by him to furnish supply for the farmers that year. Under these circumstances some one had to act and take charge of his farming interest and carry on the crop and carry out his oustanding contracts for the year, and it was within the province and jurisdiction of the Probate Court to make the order it did, and neither the heirs or creditors were necessary parties to

this proceeding. It was necessary, under the circumstances of the case, for the representative and administratrix of the deceased to continue the business for that year for the purpose of carrying out the existing contracts and winding up the same and collecting the money due, or to become due, in the fall of that year, and to manage the farming operations of the deceased for that year, and for this purpose to employ such aid as was necessary in the way of clerks, book-keepers, and overseers to carry on the mercantile and farm operation, paying them reasonable compensation for their services and hire. His Honor was in error in holding that the order of the Probate Court was void, and that the administratrix should be charged any loss incurred by the estate by reason of operating the business under the terms of said order, which he found to be $2,877.13. It was necessary for the business to be carried on, and it does not appear that the administratrix did anything that she was not empowered to do under the order of the Probate Court, and that Court had jurisdiction and authority to grant the order made; and these exceptions are sustained."

It is not claimed, however, that any losses occurred by reason of this operation of this business for the remainder of the year.

At the close of the year 1920, the administrator filed his petition with the Probate Judge praying that permission be given him to operate the farm for the year 1921. Likewise a similar petition was filed to operate the farm for the year 1922. Both petitions were granted by appropriate orders. It will be borne in mind that these petitions were not filed by James H. Glenn as guardian, but as administrator. At the end of the first year the administrator made a return which showed receipts and disbursements of $6,623.28; $1,400.00 of this being borrowed money. The total indebtedness of the estate was about $7,200.00, all of which was paid by the administrator before the end of the year 1923; a considerable

portion of the money used to pay the debts was borrowed from the guardianship fund.

Three distinct personalties on the part of the respondent must be considered in this case. He was administrator of the estate; he was guardian of the children; he was a creditor of the estate, having advanced certain of his personal funds.

As administrator he had nothing whatever to do with the real estate after the first of January following the death of J. L. Worthy. As shown above, from the case of *Smith v. Smith,* he rightfully took charge of the real estate for the remainder of the year 1920, but his farming operations for the years 1921 and 1922 were without warrant of law. The orders of the Probate Judge authorizing him as administrator to continue to operate the farm were not within the power of the Probate Judge to grant, and hence constituted no authority. His rental of the farm lands for the years following 1922 were acts of his own volition, and did not have even the sanction of the Probate Judge. As before stated no returns were being made in all of these years, and hence it is but fair to the administrator to say that it is doubtful if he himself knew accurately the condition of his affairs. When he did make an effort to file a return, as of December, 1928, the two estates were so mixed and confused that the Probate Judge would not accept the return.

In discussing this phase of the case wherein the administrator claims reimbursement for money paid out by him because of estate expenses, we refer to the case of *Ex parte Coleman,* 98 S. C., 420, 82 S. E., 674, in which the executors claimed commissions on the income from farming operations for the years 1908, 1909 and 1911. The testatrix died in August, 1908, and commissions were allowed for that year, but were denied for the remaining years upon two grounds: First, it was not their duty to continue the farming operations after 1908; and, second, that they had employed agents to attend to that business for them, and had paid the agents from the funds of the estate.

It also appeared in this case that the executors had advanced money of the estate to a negro tenant named E. Littlejohn and had taken his note therefor, which had not been paid. In denying the claim of the executors for credit on this item, the Court summarily disposed of it by saying: "This note was properly charged to them."

In the case of *McKee v. Mobley*, 3 S. C., 242, the plaintiff, father of the intestate, took possession of a store and stock of goods belonging to the estate of his son, without authority of law, and carried on the business. About a year thereafter he applied for letters of administration. In accounting as administrator, the plaintiff claimed credit for $1,412.00 advanced by him while conducting the business. After holding that the case must be treated as one of advances by the administrator in carrying on the business, the Court then says that the proper principle of accounting would be for the plaintiff to show that the estate had derived benefit from the advances, and to show the extent of the benefit. Further, "this should be clearly shown, or the administrator would not be entitled to the allowance."

If the administrator could not claim a credit for an advance of his own funds unless he could show a benefit to the estate, how can the respondent in the present case claim a credit for funds advanced from a trust estate when it is only a loss? The claim of the administrator to offset his losses as administrator against the guardianship money now in his hands and not expended must therefore be denied.

Relative to the relation of the plaintiff as guardian for the minor children, the situation is somewhat similar. The Probate Judge had no legal right whatever to grant an order for the guardian to lend to the administrator funds of the guardianship estate for the purpose of paying debts of the estate, or for any other purpose. The loan was made by the guardian to the administrator upon the promise of an unsecured note to be given by the adminis-

trator, which note, according to the record before us, was never given.

It is impossible to find any authority whatever for this loan. It was made in 1920, at which time the provisions of Section 9050 of the Code of 1932, wherein were set forth the kinds of permitted investments of guardianship funds, were applicable. Certainly no authority for this loan can be found under the provisions of that law.

When the plaintiff herein assumed his duties in the dual capacity of administrator and guardian, he very wisely undertook to administer these estates separately, and to that end deposited his funds in separate accounts in the bank. Later he was advised by the cashier of the bank to place all of his funds in one account. He followed this advice rather than the established law of the State.

The case of *Smith v. Moore,* 109 S. C., 196, 95 S. E., 351, seems peculiarly applicable. The Court says, quoting from page 201 of 109 S. C., 95 S. E., 351, 353:

"The chief property of the children, independent of their share of the above, consisted in some $5,500.00 derived from insurance on the life of H. E. Mooneyhan, payable directly to them, and some $2,500.00 they got directly from the estate of John Mooneyhan. In order to get hold of this fund of some $8,000.00 Moore became guardian of the children thirty days after he qualified executor, and then collected the fund. He mixed up the two estates without regard to the character of each. Out of the common fund thus in his hands, he paid the debts of H. E. Mooneyhan's estate above described, and he bought for his wards the one-sixth interest of the widow in the estate of H. E. Mooneyhan. And these are chiefly the acts of the guardian which the plaintiff wards have challenged.

"The two trusts were of a different character, and they ought to have been separately executed. It was and is yet the duty of the executor to administer the estate of H. E. Mooneyhan according to the rules of law. That estate has not yet

been administered, and the executor has not yet received his discharge therefrom. The executor has never rendered any account to the Probate Court of his doing as executor, save the one account he made as guardian wherein he mixed the two estates.

"The complaint in the instant action is on the three guardianship bonds. There is no dispute about the amount of money Moore received as guardian for his wards, aside from their father's estate; that is to say, he got some $8,000.00 in round figures. That fund was in no wise liable for the debts due by the father's estate, no more than for the debts of a stranger. It was the duty of the guardian to invest that fund, pay the increment on it for the maintenance of the wards, and at their maturity to pay the principal to them. He is yet bound to do that, and his sureties undertook to warrant that he would do that, and they are yet bound to perform that undertaking."

The Circuit Judge recognized the force of this case, but endeavored to avoid its applicability by holding that the facts were entirely different, in that there was a commingling of the funds in the case of *Smith v. Moore,* whereas there was not in the present case. In this holding we think there was error and in support of this holding we refer to certain extracts from the record. The fact that all the funds were carried in the bank, under one account, under advice of the cashier, has been adverted to previously. In making an examination of the return, the attorney for the appellants considered the matter so badly mixed that he moved the special referee to employ an expert to restate the accounts. Upon objection by the attorney for the respondent, the special referee stated that he would look over the accounts before he decided the motion. After looking over the accounts the expert accountant was engaged, and he had to make two statements of the accounts; the first one not being acceptable to Judge Sease. The Probate Judge testified:

"Q. Was it (the return) separate from administration and guardian accounts? A. No, sir; all mixed up so that I could not tell heads and tails. I never did see anything so mixed up in my life * * * I found the papers all mixed up—the administration and guardianship—and not one of the children's accounts kept separate * * * I couldn't make heads and tails out of them."

Mr. McLarnon, the accountant, testified: "Mr. Glenn had this mixed up in one account. He started out with guardianship account and then transferred guardian account to administration account and then it dealt with it as one account."

So, then, under *Smith v. Moore, supra,* the guardian and his bondsmen must be held liable for the guardianship funds borrowed by the administrator and used to pay the debts of the estate to the extent of $3,000.00.

We are much impressed with the efforts of the guardian to render every assistance within his power to his wards, and with the reasons given in the decree for the protection of the guardian. We are likewise impressed with the fact that under the law the insurance money could not be given to the minor children in person, but that for their benefit the law gives their funds to a guardian for care and protection. Being deprived of the use of it by operation of law, they are powerless in regard to its management; but they have a right to depend upon the law to safeguard that which the law places out of their control and in the hands of another. The good faith of the guardian can always be relied upon as a defense to any charge of misconduct on his part, but it is not sufficiently all-powerful to always defeat the rights of those who by reason of age or other legal infirmity must look to the law for protection. The following extract from 11 Ruling Case Law, 136, seems to have the support of quite a number of authorities: "An administrator, or an executor, in the absence of authority therefor, is not permitted to use any part of the estate in trade, or manufacturing, or stock speculation, or other busi-

ness venture, whereby the trust fund is put at hazard; and the doing by him of any of these things has generally been regarded as a breach of trust and a *devastavit*. It has been recognized from time immemorial as the characteristic duty of an administrator, to settle the estate of his intestate with reference to the situation of the assets at the time of the death of the decedent, and not attempt, by trade or speculation, to adjust the affairs of the estate upon an entirely different basis, which might seriously affect the question of distribution and in some instances render the estate insolvent. If a personal representative does carry on such a trade or business, he becomes answerable to those interested in the estate for all losses sustained, while he will not be allowed to share in the profits—the rule being that the persons beneficially interested in the estate may either hold the representatives liable for the amount so used with interest, or, at their election, take all the profits which the representative has made. The same penalty may be exacted of those who leave estates at the risk of business disaster by continuing without authority to operate business ventures in which the estates are invested when they come into their hands. In calculating interest in such cases the executor or administrator in fault may be charged with compound interest with annual rents, and it seems that he may be held liable for the highest legal rate of interest on the money so converted. In addition to the liability to those interested in the estate, such personal representative may be held personally liable on all contracts made with persons dealing with him in such business. No excuse can be found in the good intentions of the personal representative in venturing the funds of the estate in business in violation of this rule; and it is immaterial as to the apparent advantage which would be derived from such conduct."

The third personality with which we are interested in this appeal is that of James H. Glenn as a creditor. It appears that he has advanced several hundred dol-

lars to himself as administrator. We are not altogether clear as to either the nature or the necessity of these advances, but notice by the report that they were advanced subsequent to 1922, the last year the administrator actually farmed the lands of the estate. The report shows that these advances amounted to $3,564.50, and that the administrator repaid himself $2,006.84, leaving a balance of $1,577.66. We have endeavored to show that the retention of the farm lands by the administrator was without authority, and that it was an unfortunate personal venture. Under the *Coleman case, supra,* his advances, under these conditions, cannot be charges against the estate. The Circuit Judge was therefore in error in allowing a lien upon the land for these advances.

In justice to the respondent, we consider it only proper to review the case relied upon by him in support of the decree of the Circuit Judge. His quotation from the case of *In re Willcox,* 162 S. C., 133, 160 S. E., 260, 263, omits the first part of the paragraph, which is as follows: "This Court will, as it should, extend its hand at all times to aid in giving proper protection to a ward whose estate has been wrongfully, recklessly, or negligently dissipated by an unfaithful guardian."

The quotation then continues that a guardian faithful to his trust should not be held too strictly for any technical requirement of the law.

This is the approved doctrine of the Courts, and in the *Willcox case,* failure of the guardian to comply with the statutory requirement of obtaining the consent and approval of the Probate Court was considered a mere technical violation of the law, and did not subject the guardian to a charge of misconduct in failing to obtain same. In the present case we should not be disposed to hold the guardian responsible for a technical violation of the statutory requirements.

The text in 24 C. J., 441, holding that the personal representative may be reimbursed his personal funds used for paying just debts and contracts of the estate,

is not disputed. This authority, as well as the North Carolina case of *Sanders v. Sanders,* 17 N. C., 262, refers to debts existing when the personal representative took charge of the estate; not to debts created by him.

*Brooks v. Brooks,* 12 S. C., 422, holds: "It is not disputed that the debt was a legal demand against the estate of W. Brooks, and was paid by Mrs. Brooks out of her individual estate; she is accordingly entitled to credit therefor."

In *Watts v. Watts,* 2 McCord, Eq., 77, as well as in the *Brooks case,* the debt which the personal representative paid existed at the date of the death of the testator.

12 R. C. L., 221 is evidently cited in error. However, we find in 11 R. C. L., 221, a paragraph which conforms to the rule stated in the cases first set out above, to the effect that reimbursement by a personal representative is permissible when debts contracted by the deceased were paid by the personal representative out of his own funds.

On the question of the right of the guardian to expend a portion of the *corpus* of the estate, the respondent cites the case of *Anderson v. Silcox,* 82 S. C., 109, 63 S. E., 128, 131. In that case an expenditure was upheld in an opinion by Mr. Justice Jones, although Mr. Justice Woods filed a dissenting opinion. This was a case in equity, and the allowance of the expenditure of a part of the *corpus* seemed to have been influenced largely by the fact that the guardians had been denied the right to charge over $300.00 in premiums on bonds, and over $2,000.00 as commissions. However, we have no desire to question the doctrine announced in that case, and were there nothing else in this case than an expenditure of a part of the *corpus* for the urgent needs of the wards, the task of deciding it would be free from difficulty. In *Pickett v. Geer,* 156 S. C., 346, 153 S. E., 349, the trustees sold certain property without Court authority, but as the sale resulted in great benefit to the trust estate, the Court confirmed the sale, holding, as in *Anderson v. Silcox, supra,* that if

application to make the sale had been made, the Court would have granted it.

On the question of the right of offset by reason of loans to the estate, the respondent cites the case of *Falconer v. Powe,* Bailey, Eq., 156. In this case the administrator had purchased property from the estate for which he had not paid, and had advanced his personal funds for the payment of debts of the intestate and for the support and education of the intestate's children. In his final accounting the Court allowed him to offset or take credit for the personal funds so advanced; a very different situation from the one here presented, of money advanced to the estate in taking charge of the real estate without authority.

The authorities cited by the respondent, to the effect that findings by a referee, concurred in by the Court, will not ordinarily be disturbed, are correct. The exception is that where the preponderance of the evidence is clearly against such finding, or where there is an absence of all evidence, the finding may be reversed. This is a suit in equity, and it lies within the power of this Court to review all of the facts. In fact, in cases of this nature, where the rights of minor children are involved, it is especially the duty of this Court to examine with the utmost care all of the facts in order that a proper decision may be reached.

The only other citation by the respondent is on the subject of the allowance of costs. In *Anderson v. Silcox, supra,* the Court says: "Being an equity case, this was within the discretion of the Circuit Court, and will not be disturbed."

In that case the referee had taxed the costs equally against both plaintiff and defendant, and the Court was evidently satisfied with the discretion as shown. This Court has never relinquished its power to review discretionary acts of the Circuit Court.

It appears from the testimony in this case that shortly after the death of J. L. Worthy in 1920 there came into the hands of the administrator almost enough money to pay the

debts of the estate, which amounted to about $7,200.00. That considerably more money came into the hands of the administrator, and during the year 1923 the last of the debts had been paid. It also appears that $7,000.00 of insurance money has been collected; some of this being loaned out at interest and some loaned to the administrator. Just how much this fund was increased by interest does not clearly appear, but it does appear from the report of the special referee and from the circuit decree what amounts are still due by the guardian to the wards. From this finding there is no appeal, and the amounts are therefore fixed. They are as follows:

| | |
|---|---:|
| For Mary Elizabeth Worthy............$ | 858.71 |
| For Nancy Sarah Jane Worthy......... | 245.72 |
| For Virginia Florence Worthy......... | 719.05 |
| For David Lee Worthy.............. | 538.53 |
| For Joe Lawrence Worthy, Jr......... | 490.39 |
| For Hood Worthy .................. | 000.00 |

We have endeavored to show that the administrator has no claim against the estate for either his losses or his advances, and in this connection we may cite two South Carolina cases reported in *Ex parte Chappell,* 34 S. C., 99, 12 S. E., 934, and *Rowell v. Hyatt,* 108 S. C., 300, 94 S. E., 113, holding that such debts are personal to the administrator. His farming expenses alone were over $2,600.00 for 1921 and 1922, as admitted by his attorney in his brief. This brief also shows collections of over $13,000.00.

The amount expended by the administrator without authority far exceeds the balance still due the wards and the estate, but the attorney for the appellants in his brief calls attention to the fact that his clients do not claim the full amounts of these advances.

This is a typical case for the Court of equity to exercise its powers in an honest endeavor to arrive at what is just and right between the parties, and our conclusion is as set forth below:

### Mary Elizabeth Worthy

She did not appeal from the decree, and hence her interest in the suit is fixed by the decree of the Circuit Judge.

### Nancy Sarah Jane Worthy

The balance still due her by the guardian is......$ 245.72
She is entitled to one-sixth of $3000.00 which was
    borrowed by the administrator ............   500.00

Due her by James H. Glenn...................$ 745.72

### Virginia Florence Worthy

Balance still due her by guardian...............$ 719.05
She is entitled to one-sixth of $3,000.00 borrowed
    by administrator .......................   500.00

Due her by James H. Glenn...................$1,219.05

### Joe Lawrence Worthy, Jr.

Balance still due him by guardian is............$ 490.39
One-sixth of $3,000.00 borrowed by administrator   500.00

Due him by James H. Glenn..................$ 990.39

### David Lee Worthy

Balance still due him by guardian is............$ 538.35
One-sixth of $3,000.00 borrowed by administrator   500.00

Due him by James H. Glenn...................$1,038.35

### Hood Worthy

Balance due him by guardian...................$ 000.00
He is entitled to one-sixth of $3,000.00 borrowed
    by administrator .......................   500.00
Due guardian by Hood Worthy................   330.26

Due Hood Worthy by James H. Glenn........$   169.74

The amounts above stated are hereby declared to be valid claims against the guardian and his bond.

Under the case of *Epperson v. Jackson*, 83 S. C., 157, 65 S. E., 217, the allowance of interest in equity matters is discretionary with the Court, and in *Anderson v. Silcox, supra,* the regular method of charging a fiduciary with interest may be changed according to the circumstances of the particular case. In the present case we are content to avail ourselves of this provision of the law, and, in our efforts to arrive at the equities between the parties, to hold that no interest may be charged.

The only remaining question to be considered is that of costs; every item being charged against the appellants. With this portion of the decree we are at considerable variance with the Circuit Judge. It will be remembered that the administrator did not make returns for a number of years, and that when he attempted to do so his return was so badly mixed up that the Probate Judge would not accept it. The administrator then abandoned the Probate Court, which had had jurisdiction of the cause from the beginning, and went into the Court of Common Pleas. His complaint was signed by only Glenn & Macaulay, as plaintiff's attorneys. It again appeared that the returns were in such condition that they could not be understood, and the attorney for the appellants asked for an expert accountant. The respondent's counsel objected, and the special referee said he would rule upon the motion after looking over the returns himself. In his report, the special referee says that he employed Mr. James McLarnon, the accountant, "in fairness to all parties." The report further says that the accountant's fee was fixed by him (McLarnon) at $250.00, which was allowed.

This employment, being "in fairness to all parties," should be borne equally by both parties, especially as both parties were responsible for his employment; the respondent by reason of "mixed up" returns, and the appellants because of the

request of their attorney. However, a slight correction will be noticed later in regard to the payment of these costs.

The compensation of the stenographer should likewise be borne equally by the parties. It is true that the suit brought by the respondent was the occasion for her employment, but, her services being necessary for both parties, a fair adjustment would be as above stated, subject, however, to the slight correction hereinafter noticed.

The compensation of the referee, by agreement, "shall be fixed in keeping with the usual practice prevailing at the Chester Bar." It was fixed by the Circuit Judge without notice to the attorneys for the appellants. It seems that some effort should have been made to ascertain the "practice prevailing at the Chester Bar." It is our opinion that his compensation should be fixed in the manner agreed upon, not, however, to exceed the sum of $250.00. When so fixed it should be apportioned equally between the parties subject to the correction now to be mentioned.

There were six of the children of J. L. Worthy interested in this suit, five of whom appealed from the decree. Mary Elizabeth Worthy, represented by Mr. A. L. Gaston as her guardian *ad litem* did not appeal, and is therefore bound by the decree. *Shell v. Young,* 32 S. C., 472, 11 S. E., 299. The charge of the accountant of $250.00, which we hold should be divided equally, must be paid one-half, or $125.00, by the respondent, and $125.00 by the six children, or $20.83 each. The five who appealed therefore must pay of this $125.00 the sum of $20.83 each (*Ex parte Coleman,* 111 S. C., 484, 98 S. E., 538) instead of $25.00 each. The balance must be paid by Mary Elizabeth Worthy, who did not appeal.

In the case of the bill of the stenographer of $88.00, the administrator is due to pay $44.00, and each one of the five appellants is due to pay one-sixth of $44.00, or $7.33. The balance must be paid by Mary Elizabeth Worthy.

The same rule shall apply to the fee of the special referee when the proper amount shall be determined as hereinbefore stated.

In regard to the fees of the two firms of attorneys who represented the administrator, we are again forced to disagree with the Circuit Judge. The rule adopted in the Federal Bankrupt Court, a Court of equity, is that a trustee who is himself a competent attorney, is not permitted to employ an attorney unless the necessity for so doing is clearly shown. This is not mentioned as a rule binding upon this Court, but merely as a salutary rule adopted by another jurisdiction for the better protection of estates.

The administrator, a lawyer of recognized ability and skill, was entirely competent to make his final return and receive his discharge from the Probate Judge. Doubtless, in his years of successful practice, he has prepared dozens of final returns for his clients. His suit was prepared, and after answers were filed he employed the firms of Gaston, Hamilton & Gaston and McDonald, Macaulay & McDonald, outstanding firms not only in Chester County, but in the entire State. Were these attorneys employed to represent the estate of J. L. Worthy or were they representing the administrator to collect advances made by him personally and to protect him personally in his dual capacity? A careful reading of the transcript fails to reveal a single instance where any of these attorneys spoke or acted for any one connected with the estate except the administrator guardian.

In the case of *Sherman v. Angel, Executor*, 2 Hill, Eq., 26, the heirs found it necessary to bring suit against the executor for an accounting. The executor claimed a credit of $200-.00 paid as an attorney's fee, and in passing upon this, the Court said:

"There is certainly much good feeling in the view which the Chancellor has taken of this case, and if it was a case in which the Court could exercise any discretion, the defendant should have the benefit of it; but the rights of the

parties appear to me to depend on a rule of right, over which the Court has no control. The defendant, by neglecting to make regular returns of his administration to the ordinary, and to account with the plaintiffs, has rendered this suit necessary—the plaintiffs had no other means of coming at their rights. The principal litigation in the cause arose out of his claim to be paid for the board and lodging of the plaintiffs, and to be led into a distribution of the estate limited over to the children of his wife's mother, and both these claims were decided against him, and he now asks to be reimbursed money paid to counsel for vindicating these claims —and surely the Court would not be justified in compelling the plaintiffs to pay money which he has voluntarily given to another, to their prejudice rather than their advantage.

"It is said that some litigation grew out of one of the credits claimed by the defendant in the account which was objected to by the plaintiffs, and which was adjudged for the defendant, and this is claimed as a ground on which the defendant ought to be reimbursed his expenses. The bill was for an account from the defendant, and it was not only his duty to render a correct account, but the right of the plaintiffs to contest every item, and insist on its being proved and substantiated according to the forms of law. They have not, therefore, been guilty of any wrong, and ought not to be charged with the errors or misfortunes of the defendant."

Also in the case of *Finley v. Hunter,* 3 Strob. Eq., 81, the Court says: "There is no difficulty as to the principle upon which counsel fees are to be allowed to an executor or administrator; when an estate requires professional services to prosecute or defend its interest, and where the executor or administrator does not litigate for his own benefit, he will be allowed a counsel fee; so he will be allowed fees paid for general advice as to the most proper and profitable course of administration; but where he fails to do his duty, and is called to account, or litigates questions on which he is individually interested, or where he resists the claims of those

interested without some reasonable ground, he is not entitled to charge the estate with costs or counsel fees that he has incurred.—*Warden v. Burts*, 2 McCord, Eq., 76; *Wright v. Wright*, 2 McCord, Eq., 186; *Sherman v. Angel*, 2 Hill, Eq., 26; *Wham v. Love*, Rice's Eq., 51."

In the case of *In re. Coleman*, 106 S. C., 534, 91 S. E., 861, 862, the Court says: "When a number of lawyers are employed it is incumbent on the executors to show the necessity for employing such an extraordinary number to be paid a high price by the estate. We cannot see in any view of the case if the executors had employed Shand & Shand, Johnstone & Cromer, and Beatty why they wanted additional counsel, unless they intended to pay them out of their own pockets and not mulct the estate."

Further in the same case, the Court says: " * * * Are all capable lawyers of mental vigor and legal learning, energetic and of integrity and strength, and any two of them could have handled the estate with consummate ability and skill, and could have done everything * * * for the legal settlement of the same."

This case is cited to show that care must be taken by the administrator in the employment of attorneys, even when the estate is in need of such employment.

It may be contended that the exceptions of the appellants relative to the disposition of costs bring up for consideration only the question of the failure of the Circuit Judge to notify the attorney for the appellants of his intention to fix the costs of this suit. The attorney for the appellants was certainly entitled to receive notice of the fixing of costs, fees, and expenses in that litigation, and he was especially entitled to such notice as guardian *ad litem* for the minor children. It is reasonable for this Court to assume that, had proper notice been given, the attorney and guardian *ad litem* would have objected to the allowance of these expenses not only upon the ground that they were excessive and not fixed according to agreement, but also that

the attorneys' fees were not legitimate charges against the estate. We have therefore considered the allowance of costs and expenses as though proper notice had been given and proper exceptions taken from the decree of the Circuit Judge.

In the case of *Waddell v. Cary*, 155 S. C., 152, 152 S. E., 179, the Court refused to permit the attorneys for the appellant to enlarge their exceptions in order to bring before the Court certain points not covered in the transcript, and confined the appellant to the exceptions as originally made. In that case the refusal was based upon the ground that the attorneys for the appellants had full notice and should have availed themselves of their rights to present a full appeal to the Court.

In the present case, however, the attorney for the appellants had no notice whatsoever of the allowance of these costs and expenses, and could not be charged with the failure to present his grounds of objection when he received no notice that the question was to be determined. Even in the *Waddell case* one member of the Court, by dissenting opinion, held that in a Court of equity a litigant should not be deprived of her rights through the failure of her attorneys to present them.

We therefore conclude that but for the condition of this estate and the accounts of the administrator guardian no other attorneys would have been necessary, and that their services were rendered for the benefit of the administrator guardian personally, rather than for the estate. The Circuit Judge was therefore in error in allowing fees for the attorneys.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that this cause be, and the same is hereby, remanded to the Court of Common Pleas for Chester County to carry out the directions herein contained.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.

MR. JUSTICE CARTER dissents.

MR. JUSTICE CARTER (dissenting) : After a careful study of the record in this case, I am unable to agree with the conclusion reached in the leading opinion, and therefore most respectfully dissent. While Mr. Glenn did not comply with the requirements of the law in every particular, he has, in my opinion, done all he could to protect the estate and the interests of the children of deceased, in their person and their property. He spent much time in the performance of his duties, as administrator and as guardian, and, in my opinion, based on a careful study of the record of the case, has been absolutely fair and honest in the entire transaction. I agree with the finding of the referee and Circuit Judge, and, for the reasons set forth in the decree of the Circuit Judge, think that this Court should affirm the judgment of the lower Court.